COMMONWEALTH v. PETER FITZPATRICK, ET AL.

———

ERROR TO THE COURT OF OYER AND TERMINER OF LACKA-
WANNA COUNTY.

Argued February 21, 1888—Decided October 1, 1888.

1. Jeopardy, within the meaning of the clause in § 10, article 1., of the
   constitution, is the peril in which a defendant is placed when he is reg-
   ularly charged with crime before a tribunal properly organized and
   competent to try him.
2. In an indictment for murder, therefore, the court has no power to dis-
   charge a jury after the trial begins, without a resulting discharge of the
   prisoner, unless it be done with his consent or an absolute necessity has
   arisen which requires it.
3. The court has power to extend the term until a trial can be concluded;
   wherefore, the mere inability of the jury to agree within a few hours or
   days when the term is about to expire, does not raise such a necessity.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and
WILLIAMS, JJ.; TRUNKEY AND CLARK, JJ., absent.

No. 294 January Term 1888, Sup. Ct.; court below, No. 4
October Term 1886, O. & T.

On September 28, 1886, the grand jury returned as a true
bill an indictment of Peter Fitzpatrick, F. W. Fiedler, F. L.
Ross, Bernard McCabe and John J. Keefe, charging them, in
the first count, with the murder, and in a second count, with
the voluntary manslaughter of James W. Baird on the night
of August 31. 1886.

At the trial on January 31, 1887, the defendants were for-
mally arraigned, and pleaded not guilty, when a jury were
empaneled and sworn. At the close of the case, on February
1st, the defendants' counsel requested that the jury should be
instructed that the evidence was insufficient to warrant a con-
viction of the defendants. This instruction was refused, the
court, HAND, P. J., charging, inter alia:

First: As to the question of murder: The commonwealth
does not press for a conviction of murder in the first degree,
and we say to you that the evidence does not show such a pre-

meditation, in this case, as would warrant a conviction of murder in the first degree. But was there murder committed there that night? If there was, it would be murder in the second degree. . . . .

As we have said, there is not sufficient evidence to find murder in the first degree. If you find the blow was unlawfully inflicted by any, with all of these defendants aiding and abetting, in a fight, in heat of blood, then for such a defendant as you find implicated in this killing, your verdict should be guilty of manslaughter. You may find the evidence warrants you in convicting one, or two, or more of the defendants, and in acquitting the rest; if so, you will render your verdict in that manner. . . . .

On February 2, 1887, the jury came into the court and through their foreman stated that it was not possible for them to agree, and asked to be discharged. The court refused the request and gave additional instructions, when the jury again retired. A like statement and request were made on February 4th, and a discharge refused, the court saying: "Of course we will have to keep you together as long as the term lasts, and then the question will come whether we can discharge you or not. The responsibility may then be placed upon the court; but until the term expires there is no responsibility upon the court, and we have no authority to discharge you. It is a right that is given to the defendants, and of course we cannot interfere with it; the jury must agree."

On February 5, 1887, the jury again came into court:

By the court: Gentlemen, you have made every possible effort to agree?

Foreman: I think we have, your Honor.

By the court: Is it the opinion of all of you that you cannot agree if kept together longer? . . . . . We so understand the jury to say, unless some one thinks they can agree by staying longer.

Now, to wit, February 5, 1887, the jury in this case having come into court repeatedly, and affirmed that they could not agree, and that they had made every possible effort to agree, and that they still cannot agree, the term of the court now expiring, the court being satisfied it is useless to detain the jury longer, the jury are discharged from the further consid-

eration of the case, to which order and discharge the defendants except, at whose request a bill is sealed.

On May 5, 1887, the cause was again called for trial when the defendants' counsel filed a special plea, in which were set forth at length the proceedings had after the arraignment and general plea, and, averring that the defendants then pleading were the same identical persons tried upon said indictment, prayed to be discharged from the same. To this plea the commonwealth demurred, and prayed judgment.

After argument, the court, HAND, P. J., filed the following opinion, to wit:

The important facts in this case are as follows : Defendants were indicted on the charge of murder, the second count for manslaughter. After the evidence was in, the district attorney announced that the commonwealth did not press for a conviction of murder in the first degree. The court charged the jury that " the evidence does not show such premeditation as would warrant a conviction of murder in the first degree." Of course, under our pleadings, the count for murder could not be withdrawn from the jury, for they pass upon the degree under one count. After the jury had been out parts of five days and four nights, they were discharged from the case and the defendants held for a new trial. The jury had repeatedly come in and stated to the court that they could not agree and it was useless to keep them together. The court kept them together until the term was about to expire, and then on their reiteration that they could not agree, the case not involving, in the view of the court, a capital offence, the court being convinced that they could not agree, against the protest of defendants, discharged the jury.

It is not necessary for us to go into a learned discussion of the question of law involved. The decisions of a large number of states of the Union, would justify the discharge of the jury, after it appeared to the court trying the case that it was useless to continue the term for the purpose of forcing an agreement. There is no doubt the court could continue the term, and would always do so for any sufficient reason. The only question now is, under our Pennsylvania decisions had the court power to discharge the jury? A review of our de-

cisions in the light of Hilands v. Commonwealth, 111 Pa. 1, satisfies us that we had not. Whether in our judgment, the reason of the strict rule of law recognized in that case and cases there cited having in our enlightened age fallen, the law ought to fall, is of little moment. Whether as between the court and the prisoners at the bar there is an issue in this matter, that at the present day is a vital one, as has been the case in past history, which gave reason for the rule and for the clause in our constitution, we have no ambition to discuss. As we read the decisions of this state reaffirmed in Hilands v. Commonwealth, the inability of the jury to agree is no cause for their discharge, no matter how long they have been kept together. No discretion is left with the trial judge. No humanity for the jury, no plausible doubt in the testimony which part of the jury might discover, and part not able to discover; no question of forcing the conscience of the court, is allowed to enter into the case and permit the judge to discharge the jury without discharging the prisoner. At the trial of this case, with the decisions of other states before us, we were not prepared to take this position. At the present time we conclude that, as a matter of law in Pennsylvania, we took an erroneous view of the law. If the unbending rule of Commonwealth v. Cook, 6 S. & R. 578; Commonwealth v. Clue, 3 R. 498, is to be modified in view of the language used in Hilands v. Commonwealth, we are of the opinion that it should come from the higher and not the lower court. In view of the responsibility resting upon us, it is better to declare the law as we find it, in a case in which the responsibility is one of discharging a prisoner, rather than in a case where· by holding the jury, we had possibly forced a verdict of conviction in the first degree by wearing out a portion of the jury.

Upon a full reargument of the plea and demurrer, we are of the opinion that the plea must be sustained and judgment entered for the defendants on the demurrer, and they should be discharged from further trial under this indictment. Exception is noted for the commonwealth and bill sealed.—

Judgment having been entered in favor of the defendants on the demurrer, the commonwealth then took this writ, specifying that the court erred in sustaining the defendants' special plea and in entering judgment for the defendants on the demurrer of the commonwealth.

Arguments.

*Mr. H. M. Edwards, District Attorney*, for the plaintiff in error:

While the commonwealth does not controvert the doctrine that jeopardy attaches the moment the jury, duly empaneled and sworn, are charged with the case: Alexander v. Commonwealth, 105 Pa. 1; McFadden v. Commonwealth, 23 Pa. 12; yet the courts have allowed so many circumstances and contingencies to intervene to remove the jeopardy, that the term is to be taken in a technical sense, the result often showing that as a matter of fact jeopardy did not exist. The defendants, in the present case, as appears from the quotations from the charge of the court, were not in actual jeopardy, of life at any time. The record shows that it was utterly useless to keep the jury out for a longer period, and that their discharge was an exercise of wise and sound discretion on the part of the court.

1. The right to discharge a jury on the ground of necessity is conceded; it follows that each case must be judged of by its own facts, so as to determine the question, whether or not the necessity has arisen. An examination of the cases discloses various and different circumstances. In Hilands v. Commonwealth, 111 Pa. 1, the jury were permitted to separate after being sworn, and, in attempting to correct the error, a greater one was committed. In Peiffer v. Commonwealth, 15 Pa. 468, two errors were shown: The separation of the jury after they were sworn, without any reason whatever, and the trial of an Oyer and Terminer case in the Quarter Sessions. In Commonwealth v. Clue, 3 R. 497, the treatment of the jurors was scandalous; supplies of food and refreshment were refused; some of the jurors became sick, and the court, though importuned, refused food and medical attendance unless a majority of the jurors would agree to it. The time for such treatment has now gone by. In Commonwealth v. Cook, 6 S. & R. 577, the jury had agreed as to two defendants, but not as to the third: their discharge after but fifteen hours was without sufficient cause. In each of the cases cited, the discharge of the jury was the result of palpable mistake, or of the want of wise and discreet action.

2. In Commonwealth v. Cook, supra, Chief Justice TILGHMAN based his learned and elaborate argument mainly upon the English law as it stood on July 4, 1776. But the ancient

strictness of the law, in that respect, has very much abated. In England it is now settled that the maxim, that one cannot be put in peril twice for the same offence, means that a man cannot be tried again for an offence upon which a verdict of acquittal or conviction has been given, and not that a man cannot be tried again for the same offence, when the first trial has proved abortive and no verdict was rendered. "Hence, as a judge has by the English law, a discretionary power in cases of necessity to discharge the jury, even without the prisoner's consent, this discharge is no bar to a second trial; and such necessity exists when the jury have shown themselves unable to agree: " Whart. Cr. Pl. & Pr. § 491 n. 1. And the same is found in 1 Bishop, Cr. Law, § 1033.

3. Two years after Commonwealth v. Cook was decided, the Supreme Court of the United States said: "The discharge of the jury from giving a verdict in a capital case, without the consent of the prisoner, the jury being unable to agree, is not a bar to a subsequent trial for the same offence. The court is invested with the discretionary authority of discharging the jury from giving any verdict, in cases of this nature, whenever in their opinion there is a manifest necessity for such an act, or the ends of public justice would otherwise be defeated: " United States v. Perez, 9 Wheat. 579. If the courts are satisfied that the jury have made long and unavailing efforts to agree; that they are so far exhausted as to be incapable of further discussion and deliberation, this becomes a case of necessity and requires interference. Every question of this kind must rest with the court, under all the particular or peculiar circumstances of the case.

*Mr. Fred. W. Gunster* (with him *Mr. Chas. H. Welles*), for the defendants in error:

"Nor shall any person be subject, for the same offence, to be twice put in jeopardy of life or limb: " Art. V., Amendments, Constitution of the U. S. "No person shall, for the same offence, be twice put in jeopardy of life or limb: " Art. IX. § 10, Constitution of 1790; art. IX. § 10, Constitution of 1838; art. I., § 10, Constitution of 1874.

1. "At what step in the prosecution is a person put in jeopardy, to which he shall not be subjected the second time

for the same offence? Undoubtedly when the trial begins, in which he is charged with the capital offence. That begins when the jury is charged with the prisoner. It is so charged as soon as the twelve jurors are duly empaneled and sworn:" Hilands v. Commonwealth, 111 Pa. 1. It is idle to say that the defendants were not in actual jeopardy when the jury was empaneled and sworn, because at a subsequent stage of the case it appeared that the evidence did not warrant, and the district attorney did not press, for a conviction.

2. A jury so charged can be discharged only (1) when the prisoner voluntarily consents; (2) In cases of extreme necessity. The fact that the jury have not agreed and declare that they cannot agree, is not a sufficient necessity: Commonwealth v. Cook, 6 S. & R. 577 (1822); Commonwealth v. Clue, 3 R. 498 (1831); Hilands v. Commonwealth, 111 Pa. 1 (1885). That the term was about to expire, was not a necessity, for the court had power to extend the term: § 1, act of June 10, 1881, P. L. 113.

3. But it is urged that the discharge of the jury is within the exercise of a wise discretion. How is the court to reach a conclusion that it is useless to detain a jury? "There is nothing for it but the declaration of the jurors that they never can agree. Now, nothing is more delusive than that kind of evidence:" TILGHMAN, C. J., in Commonwealth v. Cook, 6 S. & R. 578. The language of the constitution is imperative: Hilands v. Commonwealth, 111 Pa. 1.

OPINION, MR. JUSTICE WILLIAMS:

The defendants in error, who were defendants below, were indicted and put on trial for murder. At the conclusion of the evidence the questions involved were discussed by counsel, and the jury after the charge of the court retired to deliberate upon their verdict. This was on the first day of February, 1887. On the fifth of the same month, which was Saturday and the last day of the regular term of the court, the jury not having agreed upon a verdict, was discharged by the court, notwithstanding the objection of the defendants. The learned judge of the Oyer and Terminer caused the following adjudication to be entered on the minutes: "Now to wit, 5th February, 1887, the jury in this case having come into court repeat-

edly and affirmed that they could not agree, and that they had made every possible effort to agree and that they still cannot agree, the term of the court now expiring, the court being satisfied that it is useless to detain the jury longer, the jury are discharged from the further consideration of the case, to which order and discharge the defendants except, at whose request a bill is sealed."

The defendants were again called for trial in the following month of May and pleaded specially the former trial and the discharge of the jury without rendering a verdict, in bar of any further trial for the same offence. The commonwealth demurred to this plea, and the court after argument entered judgment on the demurrer in favor of the defendants and discharged them from custody. The question thus raised is whether the facts set forth in the special plea show that the defendants have been once in jeopardy for the offence now charged against them. If so, the constitutional provision that "No person shall for the same offence be twice put in jeopardy of life or limb," is a conclusive answer to the indictment.

Jeopardy is the peril in which a defendant is put when he is regularly charged with crime before a tribunal properly organized and competent to try him. He must under such circumstances submit the sufficiency of his defence to the decision of a jury of his peers. He is in their hands, exposed to the danger of conviction with all its consequences; or in the language of the bill of rights he is "in jeopardy." From this jeopardy he is to be relieved, if relieved at all, by the verdict of the jury. Unless some overriding necessity arises after the jeopardy begins, the trial must proceed until it ends in a conviction or an acquittal. In a capital case, therefore, the court has no power to discharge a jury without the consent of the defendant, unless an absolute necessity requires it: Commonwealth v. Cook et al., 6 S. & R. 577. The mere inability of the jury to agree within a few hours or days is not such a necessity: Commonwealth v. Clue, 3 R. 498; nor is the fact that the regular term is approaching an end, for the courts have power to continue the term until the case can be properly ended.

The serious illness or insanity of the defendant, and the illness, insanity, or death of the judge or a juror engaged in the trial, have been held to create a necessity for the withdrawal

of a juror and a postponement of the trial; and it is not difficult to imagine other cases in which a similar holding should be made.. In this case, however, we take notice of the fact that Lackawanna county constitutes a judicial district with a president and an additional law judge. The adjudication does not suggest any reason why the term could not have been extended, and we assume that. there was none. There was therefore no case of necessity presented by the facts stated in the adjudication, nor did the learned judge undertake to put a finding of such necessity upon the record. The adjudication only asserts that "The court is satisfied that it is useless to detain the jury longer," and then directs their discharge. This order was a mistake. It was made in disregard of the protest of the defendants. They were in jeopardy when the order was made and its effect was to end the trial and the jeopardy without a verdict and without their consent. When they were again called upon to answer and subject themselves to the jeopardy of a trial, they had a right under the constitution to say, "We have been once put in jeopardy for this crime and we cannot be compelled to undergo the same peril a second time for the same offence." This was the effect of their special plea and it was unanswerable: Peiffer v. Commonwealth, 15 Pa. 468; McFadden v. Commonwealth, 23 Pa. 12; Alexander v. Commonwealth, 105 Pa. 1; Hilands v. Commonwealth, 111 Pa. 1.

There may be room to doubt the wisdom of the constitutional provision in its present form, but there is no room for discussion as to its effect. The justice of sustaining a plea of former acquittal or conviction is unquestioned and unquestionable; but a plea of "once in jeopardy" stands on narrower, more technical, and less substantial ground. It alleges only that there might have been a conviction or an acquittal, if the judge trying the cause had not made a mistake in law which prevented a verdict. It is of no consequence how many mistakes he makes, if the trial results in a conviction. The mistakes can be corrected on a writ of error and the defendant tried over again. But if the mistake results in closing the trial without a verdict, this is remediless. The court that made it cannot correct it. The proper court of review cannot correct it. The consequence is that a defendant charged with

taking the life of his fellow man goes out of the court and out of the reach of justice because of a mistake in law made after an honest and painstaking effort to be right. Such was the case of Hilands v. Commonwealth. Such is this case. But the constitutional provision is plain and its enforcement by the courts has been uniform.

The judgment entered upon the demurrer was right, therefore, and it is now affirmed.