# Commonwealth *v.* Greevy, Appellant.

*Criminal law—Involuntary manslaughter—Pleadings—Acquittal of indictment for murder involving same facts—Special pleading—Former jeopardy and former acquittal—Sufficiency.*

1. In an indictment for involuntary manslaughter, where the defendant had been acquitted on an indictment for murder involving the same facts, a special plea of former jeopardy and former acquittal was entered. The Commonwealth demurred to the plea and the demurrer was sustained. The defendant then entered a plea of former acquittal and a plea of not guilty. The jury rendered but one verdict, which was that the defendant was guilty in manner and form as indicted: *Held*, that on the issue raised by the special plea in bar that judgment should have been entered in favor of the defendant; that on a plea of autrefois acquit, the jury must render a verdict on such plea, as well as on the general issue and that the prisoner should be discharged.

2. On the trial of an indictment for murder a defendant cannot be convicted of involuntary manslaughter. This is because of the technical rule that upon the trial for a capital felony a prisoner cannot be convicted of a misdemeanor included in the felony. All general technical rules touching the administration of justice must be so understood as to be made consistent with the fundamental principles of justice, and all cases where a strict adherence to the rule would clash with those fundamental principles are considered as so many exceptions to the rule. The technical rule here involved ought not to be permitted to impair the constitutional right of the prisoner to a trial by jury, or deprive him of the fruits of a verdict in his favor, upon a question of fact. Where the facts in the indictment for murder and involuntary manslaughter are the same and have once been determined in the course of a judicial proceeding, the final judgment rendered in accordance therewith, cannot, so long as it remains unreversed, be again litigated between the same parties.

3. A general verdict of not guilty upon the trial of an indictment for murder, negatives the fact of the unlawful killing and is an effectual bar to any subsequent prosecution for the same killing, as a minor offense, unless it should clearly appear from the record that although the prisoner was not guilty of the felony, he was guilty of the minor offense. Where the defendant has entered a plea in bar, showing the record of the former acquittal on the in-

dictment for murder, such a plea is an effectual bar to the indictment for involuntary manslaughter.

4. The plea in bar shows that the defendant was charged with murder for the same killing charged in the indictment for involuntary manslaughter, that the case was tried upon the general issue and that the verdict of the jury was "not guilty." Upon the issue raised by the special plea in bar judgment must be entered in favor of the defendant.

*Criminal procedure—Plea of autrefois acquit—Verdict.*

5. Where, on the trial of an indictment for involuntary manslaughter, the defendant filed a plea of autrefois acquit, in the form authorized by the statute, and plea of not guilty, on both of which pleas issue was joined, and the jury was sworn to try both issues, a verdict must be rendered on the former plea. Where the jury found the defendant guilty, but rendered no verdict on the plea of autrefois acquit, a motion in arrest of judgment will be sustained.

Argued April 19, 1920.    Appeal, No. 106, Oct. T., 1920, by defendant, from judgment and sentence by Q. S. of Blair County, Oct. T., 1919, No. 30, on verdict of guilty in the case of Commonwealth of Pennsylvania v. Walter S. Greevy.    Before PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ.    Reversed.

Indictment for involuntary manslaughter.    Before BALDRIGE, P. J.

The facts are stated in the opinion o? the Superior Court.

Verdict of guilty on which judgment of sentence was passed.    Defendant appealed.

At the trial the defendant presented, inter alia, the following points:

"The evidence of the Commonwealth in this case, being identically the same as that offered by it in the indictment charging this defendant with murder for the killing of said Edward Steckroth, to No. 10, June Sessions, 1919, Oyer and Terminer of Blair County, of which charge defendant was acquitted by the jury, there can be no conviction under this indictment.

"The answer:

"This point is refused."

"The jury must take into consideration in the determination of the present case the evidence offered in the case of Commonwealth v. Walter S. Greevy, No. 10, June Sessions, 1919, Oyer and Terminer of Blair County, for the purpose of ascertaining whether the evidence offered by the Commonwealth in that case, is the same as is offered in the present case.

"The answer:

"This point is refused."

"The Commonwealth, having offered in this case, the identical evidence against the defendant as was offered in the case of Commonwealth v. Walter S. Greevy, No. 10, June Sessions, 1919, Oyer and Terminer of Blair County, wherein the defendant was charged with murder, and the defendant having offered as a defense in said case, a justification of the killing, there having been an acquittal of 'Not guilty' in said case, said acquittal is a bar to this prosecution and the verdict of the jury must be 'Not guilty.'

"The answer:

"This point is refused."

"The defendant, having been indicted and tried under Indictment No. 10, June Sessions, 1919, Oyer and Terminer of Blair County, upon the identical evidence offered by the Commonwealth in this case, in which former prosecution, the defendant offered the defense of justification and there being an acquittal, there can be no conviction in this case.

"The answer:

"This point is refused."

*Errors assigned,* among others, were refusal of defendant's points (15, 16, 17, 18) as above, quoting them, refusal of defendant's motion in arrest of judgment and sustaining the demurrer of the Commonwealth to de-

fendant's special plea of former jeopardy and former acquittal.

*James Gay Gordon* and *R. A. Henderson,* and with them *Morgan J. Sheedy* and *J. F. Sullivan,* for appellant, cited: Com. v. Griffin, 21 Pick. 523; Dinkey v. Com., 17 Pa. 126; State v. Johnson, 10 N. J. L. 185; Bishop's New Criminal Law, vol. 1, secs. 788, 789, 804; Com. v. Gable, 7 S. & R. 422; Com. v. Skeels, 2 D. R. 761; Hunter v. Com., 79 Pa. 503; Staeger v. Com., 103 Pa. 472; Com. v. Arner, 149 Pa. 35; Com. v. Gouger, 21 Pa. Superior Ct. 232; Com. v. Shutte, 130 Pa. 272; Com. v. Demuth et al., 12 S. & R. 389; Solliday v. Com., 28 Pa. 13; Thompson v. United States, 155 U. S. 271.

*Marion D. Patterson,* District Attorney, for appellee, cited: Hilands v. Com., 111 Pa. 1, and 114 Pa. 372; Com. v. Ramunno, 219 Pa. 204; Com. v. Exler, 61 Pa. Superior Ct. 425; Com. v. Trimmer, 84 Pa. 65; Com. v. Shoener, 216 Pa. 71; Walters et al. v. Com., 44 Pa. 135.

OPINION BY PORTER, J., October 11, 1920:

The trial of the defendant in the court below, upon an indictment charging involuntary manslaughter, resulted in a conviction. When called upon to plead to the indictment he filed a special plea in bar setting forth that he had been indicted in the Court of Oyer and Terminer of Blair County upon a charge of murder for the same killing, to which indictment he had entered the plea of not guilty, upon which plea the Commonwealth joined issue; that upon the trial of that issue the jury rendered a verdict of not guilty; that the offense charged in the said former indictment was the same as that charged in the present indictment and that the defendant was the same person who had been thus tried and acquitted. This is a correct statement of the matters of record set forth in the plea and a brief summary of the matters of

fact which were well pleaded, although the plea made other statements of fact which it will be necessary to consider. The plea concluded with an averment that the offense being the same mentioned in the former indictment and no other, that his acquittal upon the issue there tried was á bar to any further prosecution on the facts charged in the present indictment, made profert of the record, and prayed judgment that he be discharged from the present indictment.

The Commonwealth demurred to the plea and the prisoner joined issue on the demurrer. The court entered judgment in favor of the Commonwealth upon the demurrer, to which the defendant excepted. The defendant then entered the pleas of autrefois acquit, in the form authorized by the Criminal Procedure Act of March 31, 1860, and "not guilty." The Commonwealth joined issue upon these pleas, and the issues thus raised were submitted to the same jury. The jury rendered a verdict of guilty, but did not say anything on the question of former acquittal, the defendant moved in arrest of judgment, which motion the court overruled and sentenced the prisoner.

The first assignment of error refers to the action of the court in entering judgment in favor of the Commonwealth upon the demurrer to the special plea in bar. The appellant did not, in presenting his special plea in bar, avail himself of the right to file the short plea, "that he had been lawfully acquitted of the offense charged in the indictment," conferred by the Act of March 31, 1860, sec. 30, P. L. 437. The statute was intended to relieve a prisoner from embarrassment, it conferred a privilege, but it did not prohibit the filing of a special plea, in the forms used at common law. The appellant having elected to resort to the common law forms of pleading, the sufficiency of his plea must be determined upon common law principles. "The plea of autrefois acquit consists of two kinds of matter. 1. Matter of record, namely, the former indictment and acquittal, and before what jus-

tices, and in what manner, viz: by verdict or otherwise; and 2. Matter of fact, namely, that the prisoner is the same person that was acquitted, that the fact is the same of which he was acquitted, and whereof he is now indicted": Hale's Pleas of the Crown, vol. 2, page 241. This was all that was required in such a plea at common law, and all of this the plea with which we are now dealing sufficiently set forth. But at common law there were no degrees or grades of manslaughter and a general verdict of not guilty upon an indictment charging murder was a bar to any subsequent indictment for manslaughter and further at common law the jury were required to render a special verdict in case the killing was per infortunium or se defendendo: 2 Hale's Pleas of the Crown 302; Hawkins Pleas of the Crown, book 2, ch. 47, sec. 4; Foster's Crown Cases 289. Since our statutes have made involuntary manslaughter a misdemeanor, instead of a felony as at common law, and as it has not been the practice to require juries to render a special verdict in cases of homicide se defendendo or per infortunium, we can perceive no reason, founded upon principle, for denying to a prisoner the right to aver, in such a plea, that he had at the former trial admitted the fact of the killing and had produced evidence establishing that it was done in the necessary defense of his own person or by misadventure which involved no fault upon his part; that such was the only issue submitted to the jury, and upon it he was acquitted. A demurrer by the Commonwealth to a plea containing such an averment would be held to admit the fact, and it may be that thereupon the prisoner would be entitled to judgment in his favor, but that point it is not now necessary to decide. The appellant did in his plea (in addition to the averments above set forth), make the following averment of fact, viz: "That the record and evidence in said case will show that the said Walter S. Greevy interposed the plea of 'self-defense'; that he was a police officer of the State of Pennsylvania; and also that the shooting was

justified in the apprehension of an escaping felon, and accidental." This was not well pleaded. "Self-defense" is not and never was a proper plea to an indictment for murder; the defendant must plead not guilty and under the general issue produce evidence that the killing was necessary in his own defense and, further, the record relied upon shows that no such plea was entered, and the record must stand. It is probable that the defendant did not mean by this expression that he had formally pleaded "self-defense," but meant to say that he had presented evidence to sustain that defense and urged it upon the consideration of the jury, and in that light it probably ought to be considered. Accepting the allegation in this light, the remaining allegations of fact; "that he was a police officer of the State of Pennsylvania and also that the shooting was justified in the apprehension of an escaping felon" might have been entitled to some weight, if the pleader had not added the words "and accidental." We have, then, in this part of the plea an averment that the killing was in self-defense, that it was justified in the arrest of an escaping felon, and that it was accidental. The allegations that the killing was in self-defense and accidental are repugnant; homicide per infortunium (accidental killing) is where the party killing is supposed to have no intention of hurt, whereas in the case of homicide in self-defense he is presumed to have an intention to kill or to do some great bodily harm at the time the death happened, but did it for the preservation of his own life: Foster's Crown Cases, chap. 3, page 276. But in addition to this when a person doing an unlawful act or even a lawful act in an unlawful manner, without intending injury to any person, happens to kill, he may in some circumstances be guilty of murder, in others of involuntary manslaughter, and in still others he may be excusable. This averment not having been well drawn, the appellant can have no special advantage from it arising out of the fact that the Commonwealth demurred to the plea.

At common law if in a plea of autrefois acquit the prisoner were to insist on two distinct records of acquittal, his plea would be bad for duplicity, but if he insisted on the wrong record the court would take care that he did not suffer by it: Rex v. Sheen, 2 C. & P. 634. In the case of John Swan, Foster's Crown Cases 106, in overruling a plea in bar, Mr. Justice FOSTER said: "But at the same time the court must take care that the prisoner be not exposed to the inconvenience of undergoing two trials for one and the same fact." The plea must, then, be taken as having sufficiently averred that the defendant was tried in a court of competent jurisdiction upon a valid indictment which contained two counts, one charging murder, the other voluntary manslaughter, (for the same killing) to which he entered the plea of not guilty, upon which plea the Commonwealth joined issue; that said issue was tried by a jury and that upon the trial he produced evidence showing that the killing was in self-defense. While at common law the plea of autrefois acquit was not sustained by a record showing a verdict of not guilty unless judgment quod eat sine die was given upon the acquittal (2 Hale's Pleas of the Crown 248), this is not the rule in Pennsylvania, nor generally throughout the United States, and a verdict of acquittal, although not followed by any judgment is here a bar to a subsequent prosecution for the same offense: Kepner v. United States, 195 U. S. 130. On demurrer to a plea in bar the court will consider the whole record, and give judgment for the party who, upon the whole, appears to be entitled thereto. The sufficiency of the defendant's plea in bar must be decided upon this principle. The appellant suffers no penalty for his fault in pleading, but he cannot have the advantage which would have been his had he been able to incorporate a distinct averment of fact which might have determined the whole case.

The decision of the question presented, the proper judgment to be entered upon the demurrer to defend-

ant's special plea in bar, necessarily involves the discussion of pertinent common law principles and the modification thereof by the legislation of this Commonwealth and the construction of that legislation by our Supreme Court. That question does not seem to have arisen, in the form here presented, in any case which has been passed upon by either of the appellate courts. At common law, if a man was acquitted by verdict, upon the general issue, on an indictment of murder, autrefois acquit was a good plea to a subsequent indictment for manslaughter of the same person, or the reverse, if indicted of manslaughter and acquitted, he could not be afterwards indicted for the same death as murder, for they differ only in degree, and the fact is the same. For the same reason autrefois acquit upon an indictment of murder was a good bar to an indictment of petit treason, and e converso: 2 Hale's Pleas of the Crown 245; Hawkins Pleas of the Crown, book 2, chap. 35, sec. 6. These offenses were all felonies at common law. The Act of April 22, 1794, in the 8th section, provided that, "Wheresoever any person shall be charged with involuntary manslaughter, happening in consequence of an unlawful act, it shall and may be lawful for the attorney-general with the leave of the court to waive the felony, and to proceed against and charge such person with misdemeanor, and to give in evidence any act or acts of manslaughter; and such person, on conviction shall be fined and imprisoned as in cases of misdemeanor," etc. The 79th section of the Criminal Code of March 31, 1860, is a copy of the 8th section of the Act of April 22, 1794, and the decisions under the earlier statute are applicable to the law in its present state. In the case of Commonwealth v. Gable, 7 S. & R. 422, the indictment charged murder and upon the trial the jury rendered a verdict in the following words: "not guilty of murder, but guilty of manslaughter." The court held, Mr. Justice GIBSON dissenting, that the verdict must be considered as a conviction of voluntary manslaughter. Chief

Justice TILGHMAN, in his opinion in the case, said: "Thus we see that involuntary manslaughter is converted into a misdemeanor, and punished accordingly. If that be the case, one who is indicted of murder, cannot be convicted of involuntary manslaughter, because it is well settled, that there cannot be a conviction of a misdemeanor, on an indictment for felony. Therefore, when on an indictment for murder, the jury find that the defendant is guilty of manslaughter, it must be understood, such manslaughter as is felonious, which can be no other than voluntary manslaughter." Mr. Justice DUNCAN concurred in the views expressed by the Chief Justice. Mr. Justice GIBSON dissented, upon the ground that, under the provisions of the statute, the attorney general might, at his election, prosecute involuntary manslaughter either as a felony or misdemeanor, but expressed no opinion as to whether, upon an indictment, charging a felony, there might be a conviction of a misdemeanor included in such felony. Three years later, in 1824, the case of Harman v. The Commonwealth, 12 S. & R. 68, in which the defendant had been convicted of rape, upon an indictment which included a count charging an assault and battery, with intent to ravish, presented the question whether under the law as it then stood, a count charging a misdemeanor could properly be included in an indictment charging a felony, exclusively triable in the oyer and terminer. The opinion of the court written by Chief Justice TILGHMAN recognized the general rule, at common law, that an indictment charging a felony must not include a count charging a misdemeanor. He held, however, that the rule should no longer be enforced in those cases in which the felony charged necessarily included the misdemeanor, saying: "But whatever might have been the force of this objection, before the alteration of our Criminal Code, when rape was punished with death, it is greatly weakened since that alteration; for now, the punishment of rape, and of an assault with intent to ravish, are of the same nature."

The learned Chief Justice manifestly considered that the rule that a count charging a misdemeanor could not be included in an indictment charging a felony was based upon the same reasons with the rule which prevented a conviction of a misdemeanor upon the trial of an indictment charging a felony which included that misdemeanor, for in the course of his opinion he referred with approval to a case in which a defendant was convicted of an assault with intent to ravish, upon an indictment which charged only felonious rape. The reason for each of these rules was the same, viz: the defendant would thereby lose the benefit of making a full defense by counsel, a copy of the indictment, and a special jury, which he was entitled, at common law, to have upon his trial for the misdemeanor: 1 Chitty's Criminal Law 252. It is proper here to observe that the opinion of the Chief Justice affords no ground for holding that upon the trial of an indictment for a felony of death there could be a conviction of a misdemeanor included in the felony, the ground of the distinction being that the punishment of such a felony was not of the same nature as that which would be inflicted for a misdemeanor. In Walters v. Commonwealth, 44 Pa. 135, the indictment contained counts charging murder and voluntary manslaughter, and the jury rendered a verdict of guilty of involuntary manslaughter, upon which the court of oyer and terminer sentenced the defendant. The Supreme Court adopted the views expressed by Chief Justice TILGHMAN in Commonwealth v. Gable, supra; that upon an indictment containing counts charging murder and voluntary manslaughter there could not be a conviction of involuntary manslaughter. It was said, in the opinion in that case: "When the officers of the Commonwealth shall be of opinion that a homicide is but manslaughter, and the degree is doubtful, the statute allows an indictment charging the offense both as voluntary and involuntary, or either." Later decisions definitely determine that upon an indictment for a felony, not cap-

ital, there can be a conviction of a misdemeanor which is included in the felony charged: Henwood v. Com., 52 Pa. 424; Stevick v. Com., 78 Pa. 460; Hunter v. Com., 79 Pa. 503; Stæger v. Com., 103 Pa. 469; Com. v. Shutte, 130 Pa. 272; Com. v. Arner, 149 Pa. 35. That upon an indictment which charges a capital offense there can be no conviction of involuntary manslaughter, which is a misdemeanor, is equally well settled: Hilands v. Com., 114 Pa. 372. The common law rule had its origin at a time when nearly all felonies were capital offenses, while the punishments for misdemeanors were entirely different in their nature, and as we have said, the defendant upon the trial of misdemeanor had rights which were denied a defendant upon trial for felony, and hence, the adoption of the rule that upon the trial of an indictment for a felony there could be no conviction of a misdemeanor. With the amelioration of the Criminal Code and the abolition of capital punishment for all offenses except murder, the reason for the rule ceased. These considerations have led the Supreme Court to hold that the reason for the rule having ceased, as to all felonies save murder, the rule has ceased to exist as to felonies not capital. The result of all the later decisions is in entire harmony with the views expressed by Chief Justice TILGHMAN in Harman v. Com., supra. The sufficiency of the record pleaded by the defendant as a bar to the present indictment must be determined upon common law principles, but in view of the fact that upon an indictment for murder there can be no conviction of involuntary manslaughter.

The learned judge of the court below was of opinion that the question raised by defendant's special plea in bar had been ruled by the decision in Hilands v. Com., 114 Pa. 372. The sufficiency of a plea in bar must, in any case, depend upon the facts established by the record pleaded. We must, therefore, look into the record which was relied upon as a bar in the Hilands case and consider whether the principles upon which that case

was decided are to control the disposition of the present case. Hilands had been indicted for murder and the proceedings in the court below had resulted in his conviction of murder in the first degree, which judgment was reversed by the Supreme Court: Hilands v. Com., 111 Pa. 1. It is here important to observe that the judgment entered by the Supreme Court was not that the defendant should be discharged without day, but was in the following words, viz: "Judgment reversed, and it is further ordered that the record be remanded with this opinion setting forth the causes of reversal, to the Court of Oyer and Terminer of the County of Mercer for further proceedings." It was certainly significant that the Supreme Court deemed it necessary that the record (in the strict sense of that term) should show the reasons for the entry of the judgment which determined that the defendant could not be again tried for any offense of which he might have been convicted upon that indictment. The defendant was subsequently indicted in the court below for involuntary manslaughter, to which indictment he interposed a special plea in bar setting forth the record of his trial upon the indictment of murder, for the same killing. The Commonwealth demurred to the plea and the court entered judgment in favor of the Commonwealth, sustaining the demurrer. The trial resulted in a conviction of involuntary manslaughter. There was an appeal from that judgment to the Supreme Court, the only question considered being the sufficiency of the record pleaded as a bar to the indictment for involuntary manslaughter, and the Supreme Court affirmed the judgment: Hilands v. Com., 114 Pa. 372. Mr. Justice PAXSON, who wrote the opinion in that case, said: "The case comes before us now upon the pleadings only; the evidence is not here; hence, we do not know whether upon the trial for involuntary manslaughter, a felonious homicide was proved." The record which in that case was relied upon as a bar disclosed; that the prisoner had been indicted for murder; that a jury had

been impanelled and sworn to try the case and had been discharged by the court of its own motion, without rendering a verdict, not only without the consent but against the will of the prisoner, and in the absence of any necessity for such action. Another jury was placed in the box, when the prisoner pleaded former jeopardy, which plea the court overruled, and the trial proceeded, resulting in a conviction of murder in the first degree, and that, upon appeal, the Supreme Court had reversed that judgment, for the reason that, the charge being for a capital offense, the first jury ought not to have been discharged, that the prisoner's plea of former jeopardy, when the second jury was called, ought to have been sustained, and that the Supreme Court had made the order above quoted. All this appeared from the record proper, without any resort to what may be called the secondary record. The court held that the prisoner could never be tried again upon any charge of which he might have been convicted upon the first indictment, for as to such offense he had been once in jeopardy, but it further held, following Walters v. Commonwealth, 44 Pa. 135, that he could not have been convicted of involuntary manslaughter upon the first indictment and he had, therefore, never been in jeopardy of conviction of that offense. The controlling question in that case was whether the defendant could have been convicted of involuntary manslaughter upon an indictment for murder, and the negative answer to that question rendered the record insufficient as a bar to an indictment for a misdemeanor, it did not disclose a verdict by a jury, upon the general issue, which negatived the fact of the killing. The record was not sufficient to sustain a plea of autrefois acquit for it did not show an acquittal upon trial by verdict of a jury: 2 Hale's Pleas of the Crown 246; Hawkins Pleas of the Crown, book 2, ch. 35, sec. 6; 1 Chitty's Criminal Law 457; nor was it sufficient to sustain a plea of autrefois convict, for although the second jury had found him guilty of murder in the first degree,

that judgment had been reversed. Hilands did not, in his special plea, aver that he had been either convicted or acquitted, he attempted to invoke the protection of the constitutional provision that, "No person shall, for the same offense, be twice put in jeopardy of life or limb," which had availed him upon his conviction, by a second jury, of murder. He in that case escaped the consequences of the conviction, upon the ground that the discharge of the first jury, without his consent, in the absence of necessity, was a violation of the privilege assured him by the constitutional provision. The clear distinction between the nature of the protection given by this constitutional provision and that which shields a defendant from being tried a second time for the same fact of which he has been acquitted by a jury was recognized by Mr. Justice DUNCAN in Com. v. Cook, 6 S. & R. 595, one of the earliest cases in which the constitutional provision was interpreted in the manner of which Hilands received the benefit after his conviction of murder. The learned justice, referring to the constitutional provision, said: "It is borrowed from the common law; and whatever construction it had received in courts of common law, ought to be given to it. It would be idle and unmeaning, if it merely intended to protect the accused against a second trial, for it is a universal principle, not only in every crime, whatever be its grade, but in personal actions, and in all questions of civil right, that a verdict and judgment is a bar to all subsequent proceedings for the same cause, between the same parties or privies........There is a wide difference between a verdict given, and the jeopardy of a verdict; hazard, peril, danger, jeopardy of a verdict, cannot mean a verdict given. Whenever the jury are charged with a prisoner, where the offense is punishable by death, and the indictment is not defective, he is in jeopardy of his life." The language of Mr. Justice WILLIAMS, in Com. v. Fitzpatrick, 121 Pa. 117, refers to this distinction: "The justice of sustaining a plea of former acquittal or conviction is

unquestioned and unquestionable: but a plea of 'once in jeopardy' stands on narrower, more technical, and less substantial ground. It alleges only that there might have been a conviction or an acquittal, if the judge trying the case had not made a mistake in law which prevented a verdict." This distinction is also illustrated by the fact that the plea of "once in jeopardy" is available to a defendant in capital cases only. In felonies not capital the constitutional provision does not prevent the discharge of a jury without the consent of the defendant: McCreary v. Com., 29 Pa. 323. But in felonies of that character the verdict of a jury, upon a valid indictment, in a court of competent jurisdiction, acquitting the defendant of the fact is an absolute bar to any subsequent prosecution for the same offense.

This principle is essential to the maintenance of the right of trial by jury. The jury system would become a mockery if, in the administration of the criminal law, officers of the government were permitted time and again to bring a man to trial for the same alleged unlawful act, after a jury had upon a fair trial found him not guilty of the fact upon which all of the indictments depended. If the government could try a man a second time after one jury has found a fact in his favor, then there can be no limit to the number of times that he may be brought to trial. It is true, that, in some of the cases holding that the discharge of a jury in a capital case, without the consent of the prisoner, brought him within the protection of the constitutional provision, it has been said that such discharge was equivalent to an acquittal, but that must be accepted as meaning acquittal of any offense of which he might have been convicted on that indictment. Hilands against the Commonwealth decided that when, upon an indictment of murder, the jury was discharged without the consent of the prisoner, he could not be again tried for the felony, but that he might be indicted and tried for involuntary manslaughter, and that was all that it did decide.

The present case is clearly distinguishable from Hilands v. Commonwealth, upon the ground that there was, upon the trial of the indictment for murder, an acquittal of the defendant by the verdict of a jury upon the general issue; a finding of fact, by the only tribunal competent to pass upon the facts. It is true that, under the law of this State, he could not have been convicted of involuntary manslaughter upon trial of the indictment for murder, because of the technical rule that upon the trial for a capital felony the prisoner cannot be convicted of a misdemeanor included in the felony. But the fact, the unlawful killing, in both the felony and the misdemeanor is the same, differing only in the degree of guilt. All general technical rules touching the administration of justice must be so understood, as to be made consistent with the fundamental principles of justice, and all cases where a strict adherence to the rule would clash with those fundamental principles, are to be considered as so many exceptions to the rule: Foster's Crown Cases 38. The technical rule here involved ought not to be permitted to impair the constitutional right of the prisoner to a trial by jury, nor to deprive him of the fruits of a verdict in his favor, upon a question of fact. When a fact has once been determined in the course of a judicial proceeding and a final judgment rendered in accordance therewith, it cannot, so long as it remains unreversed, be again litigated between the same parties. The estoppel is not confined to the judgment, but extends to all the facts involved in it as necessary steps, or the groundwork, upon which it must have been founded: Com. v. Evans, 101 Mass. 25; Com. v. Feldman, 131 Mass. 588; Com. v. Ellis, 160 Mass. 165; State v. Waterman, 87 Iowa 257; Carson v. The People, 36 Pacific Rep. 551 (Colorado). The principle is illustrated by the case of Altenburg v. Com., 126 Pa. 602. Altenburg had been tried and acquitted under an indictment charging that he had furnished liquors on certain Sundays. He was subsequently indicted and tried for furnishing liquors

to persons visibly affected by intoxicating drink. It is certainly clear that he could not upon the first indictment have been convicted of the offense of furnishing liquors to persons visibly intoxicated; that is the technical rule, but it was held that the fact had been determined, as to those particular days, by the acquittal in the first case, and that he could not be called upon to defend himself, upon the trial of the second indictment, against the charge of furnishing liquor on those days.

The courts, in the administration of the common law, so jealously guarded the right of trial by jury and took such care to secure to a prisoner the full fruits of a verdict in his favor, that there was no danger of a man acquitted by verdict upon an indictment of murder being afterwards called upon to answer an indictment for a minor offense, involving the same killing. Homicide per infortunium or se defendendo, were not felonies at common law, but were minor offenses involving a forfeiture of goods, and the slayer might be charged in a special indictment for the same: Hawkins Pleas of the Crown, book 1, ch. 29. When upon the trial of an indictment of murder it appeared from the evidence that the prisoner had killed the deceased se defendendo or per infortunium, the jury were required to render a special verdict. "But in these cases it is not sufficient generally to find it done se defendendo, or per infortunium, but the special matter must be set down how it was done, and if upon the special matter shown it shall appear to be murder or manslaughter, the court will accordingly judge of it, though the jury conclude, et sic per infortunium, or sic se defendendo": 2 Hale's Pleas of the Crown 302-305 (side paging); Hawkins Pleas of the Crown, book 2, ch. 47, sec. 4. Mr. Justice FOSTER, whose views were most humane, did not think it was "the business of judges to be hunting up forfeitures," and was more liberal in receiving general verdicts of not guilty; yet he was of opinion that in any case in which the prisoner might be considered as blameworthy, though not a

felon, the jury should be required to state the grounds
of the acquittal, or render a special verdict: Foster's
Crown Cases 289. It is here proper to observe that the
opinion of Mr. Justice FOSTER, in Kinloch's case, Fos-
ter's Crown Cases 29, was relied upon, and the admira-
tion, by our own Supreme Court, of the learning and
good sense of that distinguished jurist expressed, in Com.
v. Cook, 6 S. & R. 583. The respect which Mr. Justice
FOSTER held must be given to the verdict of a jury is
illustrated by his discussion of the question whether it
was advisable to proceed upon an indictment for murder
against a person plainly appearing to be guilty of petit
treason, as where a wife murdered her husband or a
servant his master. He states that the law considers
petit treason and murder as one offense differing only in
circumstance and degree; yet there is some difference
between them with regard to the judgment to be pro-
nounced, and a very material one with regard to the
trial, and there could not be a conviction of petit treason
upon a trial of an indictment for murder. He then said
that if, upon the trial of an indictment for murder,
through a mistake on the part of the prosecution, it
should come out in evidence that the prisoner was guilty
of petit treason, he did not think it by any means ad-
visable to direct the jury to give a verdict of acquittal.
"For a person charged with a crime of so heinous a na-
ture ought not to have the chance given him by the court
of availing himself of the plea of autrefois acquit. In
such case I should make no sort of difficulty of discharg-
ing the jury of that indictment, and ordering a fresh in-
dictment for petit treason": Foster's Crown Cases 328.
This is the language of the learned judge who spoke in
Kinloch's case and, when considered in connection with
his language in that case it means, and only can mean,
that the discharge of the jury, without a verdict, would
protect the defendant from being again put in jeopardy
for any offense upon which he might have been convicted
upon that indictment; that such discharge would not be

effective as a bar to a prosecution for the offense of petit treason, of which he could not have been convicted upon that indictment, but that a verdict of acquittal upon the indictment of murder would be a bar to a subsequent prosecution for the petit treason, for the reason that the verdict of the jury would negative the fact of unlawful killing. This renders clear the distinction between this case and that of Hilands v. Com.; between the effect of a verdict of acquittal and that of a discharge of a jury without verdict. The reason which, at common law, required a jury to render a special verdict, where it appeared, upon the trial of an indictment of murder that the prisoner was not guilty of felony but was guilty of a minor offense, was that the effect of a general verdict of not guilty would be to negative the fact of the killing, which would work no kind of penalty: 1 Chitty's Criminal Law 642 (side paging). It is thus clear beyond question that, at common law, a general verdict of not guilty, upon the trial of an indictment of murder, negatived the fact of the unlawful killing, and was an effectual bar to any subsequent prosecution for the same killing, as a minor offense, unless it clearly appeared from the record that the jury had found that although the prisoner was not guilty of the felony, he was guilty of that minor offense. The record upon which the defendant's plea in bar was founded would, at common law, have been an effectual bar to the present indictment, even if involuntary manslaughter had then been a misdemeanor.

Chief Justice GIBSON declared, in Peiffer v. The Com., 15 Pa. 470: "Even the forms and usages of the law conduce to justice; but the common law, which forbids the separation of a jury in a capital case before they have been discharged of the prisoner, touches not matter of form, but matter of substance." It cannot with reason be affirmed that the common law principle that, in a criminal case, the finding of a fact in favor of the prisoner, by a general verdict of not guilty, in a court of

competent jurisdiction, shall be conclusive against the Commonwealth in any subsequent prosecution for the same fact, is less a matter of substance. The people of this Commonwealth, in all its organic laws, have with tenacity insisted that trial by jury shall be as it was at the time of our separation from the mother country, the provision in the present Constitution being in this language: "Trial by jury shall be as heretofore, and the right thereof remain inviolate." This means not merely that a prisoner shall have the right to a trial, but that he shall be entitled to all the fruits of a verdict in his favor. Neither the legislature nor the courts of the Commonwealth have indicated any disposition to depart from the principles of the common law which protected a defendant, who upon an indictment of murder had gone to trial upon the general issue and the verdict had been not guilty, without qualification, from any subsequent prosecution for a minor offense involved in the same killing. In the present case, the Commonwealth having demurred to the plea in bar, no question of fact is involved and the evidence upon the murder trial is not before us; we can, therefore, consider only the record proper, which consists of the indictment, the pleadings, the issue thereby formed and the verdict. These show that the defendant was charged with murder for the same killing involved in the present indictment for involuntary manslaughter, that the case was tried upon the general issue and that the verdict of the jury was "not guilty." We have given to the question thus presented the careful consideration which its importance deserves and, after mature reflection, are convinced that, upon the issue raised by the special plea in bar, judgment ought to have been entered in favor of the defendant.

It may be said that, even if the jury, upon the trial of an indictment for murder, should render a verdict that the defendant was guilty of involuntary manslaughter, the court could not enter judgment upon the verdict. That is true, but the answer is, that such a verdict would

not negative the fact of an unlawful killing. True it is, also, that the defendant could afterwards be indicted for involuntary manslaughter and he could not plead in bar his acquittal upon the indictment for murder, for the record upon which that plea must rest would show that while he had been acquitted of the felony, the jury had found that he killed the deceased. The verdict of the jury, that the defendant had unlawfully (not felonious-ly) killed, would not even be evidence against the de-fendant upon his trial for involuntary manslaughter, for he might have something further to offer in his de-fense. If a defendant is to be tried twice for the same fact it is but just that he should have the right to insist that the record upon his trial for the felony must show that he was acquitted upon grounds which rendered him liable to subsequent prosecution for the misdemeanor, when the Commonwealth puts him upon trial for that misdemeanor. The argument against this proposition, founded upon convenience, is not entitled to serious con-sideration as against the proposition that the right of trial by jury shall remain inviolate. It really does not involve serious inconvenience. The public prosecutor when in doubt whether an offense is voluntary or invol-untary manslaughter can, under the provisions of the Act of March 31, 1860, prefer an indictment containing two counts, one for voluntary manslaughter and the other for involuntary manslaughter, and the jury may render a verdict of guilty of either, if the evidence so warrants. When, upon the trial of an indictment of murder, the evidence discloses that the killing was not felonious, the court may discharge the jury and the de-fendant could then be indicted for involuntary man-slaughter, and that would, so far as principles are con-cerned, be the case of Hilands v. The Commonwealth over again. When, in such a case, a question fairly arises, under the evidence, whether the killing was fe-lonious or only a misdemeanor, the safer course would be that pursued at common law, to have the jury, under

proper instructions, find the defendant guilty of murder or voluntary manslaughter, in case they found the facts to be such as to constitute felonious homicide, and in case they found the facts to be such as to constitute only involuntary manslaughter, then, to find a special verdict stating the facts. Such special verdicts were usual at common law and are by no means rare in Pennsylvania: Smith v. Com., 100 Pa. 324. It is possible that a case might occur in which, upon the trial for murder, there was a general verdict of acquittal, yet the Commonwealth might be able, by traversing the special plea in bar, to show, under proper averments in the replication, that the prisoner had admitted the killing and the only issue submitted to the jury had been whether it amounted to a felony or was merely the result of an act (not felonious) negligently done without intention to injure any one, and that the jury had been instructed to acquit the defendant if they did not find the felony. The disposition of such an issue would involve the consideration of the secondary record, including the charge of the court. It has been held in some jurisdictions that parol evidence was admissible upon the trial of such an issue, in order to assist in defining the issue actually passed upon by the jury: State v. Waterman, 87 Iowa 257; Hoisington v. Brakey, 31 Kansas 560. The question of what it is proper to consider upon the trial of the issue when the special plea in bar is traversed is not, however, involved in this case and upon it we express no opinion. We deem it proper here to state, though it bears not upon the question being considered, that the course pursued in this case by the learned district attorney was the only one which, in any proper view of his official duty, was open to him. The evidence of the Commonwealth would, in the absence of explanation by the defendant, have warranted a conviction of murder of the second degree and it was the duty of the officer to indict and try him for that offense. The information charging involuntary manslaughter was made by a rela-

tive of the deceased, and the question being a new one it was well to have it settled. The question involved in the disposition of this special plea in bar is not one likely to often arise, for this is the first case in which it has been presented, although involuntary manslaughter has been a misdemeanor for a century and a quarter. The first assignment of error is sustained.

The defendant after his special plea in bar had been adjudged insufficient filed the pleas of autrefois acquit, in the form authorized by the statute, and not guilty, on both of which pleas issue was joined and the jury was sworn to try both issues. The jury found the defendant guilty, but rendered no verdict on the plea of autrefois acquit. The defendant moved in arrest of judgment for the reason that the verdict did not dispose of the plea of autrefois acquit. The court overruled the motion in arrest of judgment, which action is assigned for error. It is argued that there was no evidence to support this plea, but, even if that be true, it did not obviate the necessity of a verdict upon that issue. Mr. Justice BLACK, discussing the identical question, said, in Solliday v. Com., 28 Pa. 15, "The defendant has pleaded it. The prosecuting officer of the government has denied it, and appealed to a jury to determine the issue. Until it is determined by a jury, any sentence which treats it as false must be against law......We can know nothing here but the naked record, and from that we cannot pronounce it impossible for the defendant to have proved the identity of the two charges. Besides, this, I have already said that the clearness of the fact does not take away from the jury the right, nor relieve them from the duty of pronouncing upon it. No man shall be convicted, unless by the judgment of his peers, in a plain case more than a doubtful one. Nor can we think that a verdict of guilty implies that the jury found against the defendant on the plea of former conviction." We do not deem it necessary to further discuss this assignment of error, for that the judgment should be arrested is au-

thoritatively determined by the decision above cited and, also, by Commonwealth v. Demuth, 12 S. & R. 389. There are numerous other assignments of error, but as those which we have discussed go to the whole case, we deem it unnecessary to pass upon the merits of such as remain.

The judgment is reversed and the defendant is discharged without day.