Commonwealth *v*. Friedman et al.  Appeal of Frank.

492

Argued October 19, 1928.

Before HENDERSON, TREXLER, KEL-
LER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*W. H. Coleman*, and with him *Louis Little*, for appellants, cited: Commonwealth v. Cook, 6 S. & R. 577; Dougherty v. Commonwealth, 69 Pa. 286.

*Samuel H. Gardner*, for the appellee, cited: Mc-Creary et al. v. Commonwealth, 29 Pa. 323; Common-

wealth v. Greevy, 75 Pa. Superior Ct. 116; United States v. Perez, 9 Wheaton 579; Commonwealth v. Keeper of the Philadelphia County Prison, 76 Pa. Superior Ct. 98.

OPINION BY GAWTHROP, J., December 13, 1928:

Appellants, Harry Frank and Meyer Letwin, together with Samuel Friedman and Simon Rosenthal, were indicted for conspiracy to commit arson and to defraud certain insurance companies. At the trial before Judge GRAFF of Armstrong County, specially presiding, Friedman and Rosenthal entered pleas of guilty. Appellants were tried and the jury retired to deliberate about two o'clock on Saturday afternoon, December 17, 1927. After they had deliberated for about two hours, they communicated with Judge GRAFF that they were hopelessly deadlocked and could not agree; that the jury stood eleven to one for conviction and that an agreement was impossible for the reason that one juror had determined, before hearing the evidence in the case, to vote for acquittal. The judge refused to discharge them at that time and later in the afternoon left for his home in Armstrong County. Prior to his leaving he instructed the officers in charge of the jury to refer any further communications which the jury desired to have with him to Judge MacFARLANE, who was then presiding judge of the criminal courts of Allegheny County. About nine o'clock on the next day (Sunday), the crier of the court called Judge MacFARLANE on the telephone and told him that the jury reported to the officers who had them in charge that they could not agree, and that two of the women jurors were ill. Thereupon, Judge MacFARLANE instructed the crier to tell the jury that they were discharged and to take the verdict slip and bring it into court on Monday morning when it would be entered on the record that the jury was dis-

charged. It further appears by the statement of the trial judge that during the trial one of the officers in charge of the jury reported to him that jury woman No. 6 was ill and that it was a serious question whether she would be able to continue to serve during the trial. Judge GRAFF stated further that during the remainder of the trial he observed this juror and that it was quite apparent to him that she was in distress. When the case was called for a second trial, appellant entered a plea of "formal acquittal." To this plea a replication was filed by the district attorney. After a trial was had on this issue before Judge GRAFF, a verdict was directed in favor of the Commonwealth. During the hearing the matters above related in respect to the circumstances in which the jury was discharged were established by witnesses. On January 30, 1928, appellants were convicted on nine counts in the indictment.

It is contended in their behalf that the discharge of the jury in the absence, and without the consent, of them or their counsel when no judge was present and no court in session, was a mistake in law which operates as an acquittal. In other words this contention seems to be that, as there might have been an acquittal if Judge MACFARLANE had not made a mistake in law (by discharging the jury in the way he did) which prevented a verdict, the result of the mistake was an acquittal. The contention is not supported by the precedents in this jurisdiction. While that would be the effect of a mistake in law which prevented a verdict in a capital case (Com. v. Cook, 6 S. & R. 577; Com. v. Fitzpatrick, 121 Pa. 109), such a result does not follow in cases less than capital. (McCreary v. Com., 29 Pa. 323; Com. v. Greevy, 75 Pa. Superior Ct. 116; Com. v. Phila. County Prison, 76 Pa. Superior Ct. 98.) Our Supreme Court decided at an early day that in capital cases the court has no power, without

the consent of the prisoner, to discharge the jury prior to its agreement, except for a reason which amounts to manifest and absolute necessity: Com. v. Cook, supra. If a mistake in law results in closing the trial in a capital case without a verdict and the government brings the same man to trial again for the same alleged offense, the plea of "once in jeopardy" is available to him. But since the decision in McCreary v. Com., supra, it has been settled in Pennsylvania that in felonies not capital the plea of "once in jeopardy" is not available to a defendant. In such cases the constitutional provision as to putting a person twice in jeopardy for life or limb does not prevent the discharge of the jury without the consent of the defendant. Although appellants could not plead "once in jeopardy" in this case, their present contention amounts to no less than an effort to obtain by a plea of "former acquittal" the same immunity from a second trial for the same offense that is guaranteed under the twice in jeopardy clause of the constitution. This our law does not sanction. A plea of "former acquittal" presupposes a verdict. Indeed it seems to be a sufficient answer to the present contention that as there was no verdict rendered by the jury at the first trial there was no reason whatever for the entry of a plea of former acquittal. Even though we were to concede, which we do not, that the court erred in discharging the jury, this would not require us to sustain the motion in arrest of judgment and discharge appellants. In Com. v. Gabor, 209 Pa. 201, the defendant was indicted and tried for murder and convicted of manslaughter. By inadvertence this verdict was received and the jury discharged in the absence of the prisoner. He moved for arrest of judgment and a discharge from custody. The court refused the motion, but set aside the verdict and ordered a new trial, holding that the error was not such as to entitle

the defendant to a discharge; that at most the discharge of the jury was an error which would entitle appellants to another trial. In cases not capital the jury may be discharged in case of reasonable necessity without affecting the right of the Commonwealth to try again. Such necessity must be reasonable. A failure of a jury to agree, after due efforts to do so, justifies the discharge: Sadler's Criminal Procedure, page 337, Sec. 347. See also Wharton's Criminal Pleading and Practice, 9th Ed., Sec. 725, page 500. In 16 Ruling Case Law, page 32, Sec. 126, it is stated: "American authorities generally announce the rule that the power to discharge the jury is within the sound discretion of the trial judge and that his exercise of such discretion will not be reviewable by the appellate courts, unless its clear abuse appears." We are of opinion that the discharge of the jury was fully warranted by the circumstances and amounted to a sound exercise of judicial discretion. Appellants were not hurt by the method by which the discharge was affected. If the court had been in session at the time and the defendants and their counsel had been present, what could they have done but object to the discharge? They could not have prevented it. It has been held that in cases not capital it is not necessary that the prisoner be present when the verdict is rendered: Com. v. Craig, 19 Pa. Superior Ct. 81; Lynch v. Com., 88 Pa. 189. His presence at the time of the discharge of the jury before verdict is no more important. It is also urged that the discharge of the jury was illegal, because it was done on Sunday. That question was before us at this term in Com. v. Nixon, No. 47, April T., 1929. In our opinion written by Judge Linn, we held that as a jury may render its verdict and may be discharged on Sunday (Huidekoper v. Cotton, 3 W. 56), accepting the conclusion that the jury cannot agree, is legal.

The other contention is that the court below erred in refusing the petition of appellants for immunity by reason of the facts that certain members of the state police and the fire marshal of Allegheny County compelled them to attend an investigation with respect to the fire mentioned in the indictment and to testify concerning the same before these officers. They claimed immunity under the provisions of Sec. 4 of the Act of 1927, P. L. 450, entitled ''An Act relating to fires and fire prevention, etc.'' The section authorizes the state police to investigate the origin or circumstances of any fire occurring in this Commonwealth. They and their assistants are given power to summon witnesses and compel them to appear before them or any of them, and to testify in relation to any matter which is, by the provisions of the act, a subject of inquiry and to require the production of documents deemed pertinent and necessary to the inquiry, and to administer oaths and affirmations to any person appearing as a witness before them. It provides further that no person shall be excused from appearing before the state police or its assistants when summoned so to do, nor when ordered to do so shall he be excused from testifying or producing documents upon any such inquiry, upon the ground or for the reason that the testimony or the evidence, document-ary or otherwise, required of him may tend to convict him of a crime or subject him to a penalty; and that no person shall be prosecuted or subjected to a penalty or forfeiture for or on account of any transaction concerning which he may have been required so to testify or produce evidence; and no testimony so given or produced shall be received against him upon any criminal investigation or proceedings. Sec. 14 of the act specifically exempts from repeal the Act of April 18, 1864, P. L. 465, entitled ''An Act to provide for the appointment of a fire marshal for Allegheny County.''

Sec. 3 of the latter act imposes on the fire marshal the duty to investigate the origin and cause of all fires occurring in Allegheny County. Sec. 5 empowers him to compel the attendance of witnesses whom he may desire to examine in relation to any fire, by subpoena and attachment; authorizes him to administer oaths and affirmations; and provides further that no testimony taken under oath or affirmation before the fire marshal shall be used in evidence against the party giving it in any civil or criminal proceedings, except in prosecutions against such party for perjury.

Appellants were caught red handed in the act of preparing to set fire to a building occupied as a milinery store, by the fire marshal of Allegheny County and several detectives and a member of the state police. They were then taken to the office of the fire marshal and questioned by these officers not under oath. After being warned by the fire marshal that any statements which they made would be used against them, they signed written confessions of their guilt. Later they were taken before the district attorney and asked by him as to whether or not the matters set forth in these confessions were true, and whether or not they had been voluntarily given, to both of which questions they replied in the affirmative. We are clear that the inquiry at which these confessions were obtained was not such as was contemplated by the lawmakers when they passed either of the acts of assembly mentioned. The investigations referred to in both acts relate to fires ''occurring.'' Here the investigation related solely to conspiracies to commit arson and to defraud certain insurance companies thereby. In our view the only persons exempted from prosecution under the Act of 1927 are those who have been summoned and have been compelled to attend and over their objection, to testify under oath at an investigation conducted before the state police or its

assistants, relating to the origin or circumstances of a fire which has occurred in the Commonwealth; and the only evidence which may not be received or used in evidence in a criminal proceeding against the person producing it is that which has been obtained when the state police or its assistants, or the fire marshal, have procured it in that manner at an inquiry or investigation relating to a fire which has occurred. In the circumstances appellants were not entitled to immunity from prosecution and penalty provided by the statute. Therefore, their petition for immunity was properly refused.

The assignments of error are overruled and the judgments are affirmed, and it is ordered that the defendants appear in the court below at such time as they may be there called, and that they be by that court committed until they have complied with the sentence, or any part of it, which had not been performed at the time the appeals in this case were made a supersedeas.