## McFadden *versus* The Commonwealth.

1. Until the jury in a capital case are *sworn*, they may be discharged by the Court and the case continued.

2. A criminal trial does not begin till the jury is empannelled and sworn; and the party charged is not in jeopardy till that time.

3. On an indictment for murder, eleven jurors were empannelled, when, the panel being exhausted, a tales was awarded. After its return, the Commonwealth's counsel challenged for cause the tenth juror empannelled, and the juror was discharged, the prisoner's counsel objecting. Another juror was then called, in whose selection the prisoner declined to participate. He was empannelled; but before another juror was called or any of the jurors *were sworn*, on motion of the Commonwealth's counsel the jurors empannelled were discharged and the case continued. At the next term the prisoner was arraigned, and judgment being given against him on his special pleas to the former proceeding, he refusing to plead further, the plea of not guilty was entered by direction of the Court, and he was convicted of murder in the second degree. *Held*, that he had not been in jeopardy in the first proceeding.

4. A challenge may be made on the part of the Commonwealth at any time before the oath is tendered to the juror; and the mere passing of the juror by the District Attorney over to the party charged or his counsel is no waiver of the right of challenge on the part of the Commonwealth.

5. Though a juror challenged for defect of religious belief *may* be heard by the Court in reply, yet it is not a ground of error that he was not so heard, it not appearing that he offered to testify.

6. It is a good cause of challenge to a juror that when on a jury in another case at the same term, he said he was "a Tom Paine man, and would as lief swear on a spelling book as on a Bible;" and that on a former occasion while a member of the panel of jurors, he had said that he had tried to acquit any one the judge desired to have convicted.

ERROR to the Court of Oyer and Terminer of the *county of Philadelphia*.

A bill of indictment for murder was found against James McFadden, on 1st December, 1851. On 19th January, 1852, the plea of not guilty being entered, the case was proceeded with. Each juror, on being called, was challenged for cause, by the Commonwealth; was examined upon oath or affirmation, *sur voir*

[McFadden *v.* The Commonwealth.]

*dire;* and, according to his answer, he was either set aside for the cause shown, or, the challenge being withdrawn or overruled, he was submitted to the prisoner, for either choice or peremptory challenge. Some jurors were challenged peremptorily by the prisoner, some set aside for cause, and *eleven* were thus chosen, when, the panel being exhausted, the District Attorney prayed a *tales de comitatu,* which was awarded, returnable at three, P. M., until which hour the Court adjourned. At the opening of the Court in the afternoon, the writ of *tales* was returned by the sheriff; when the District Attorney asked leave to challenge one of the *empannelled* jurors (the *tenth*) for cause, which the Court permitted; and, after examining witnesses to sustain the alleged cause, the Court sustained the challenge, and the juror was dismissed. This was done against the prisoner's consent.

The cause of challenge which was assigned to the tenth juror, was "the misconduct of the juror on a previous occasion, in another case, in quarrelling with his fellow jurors, and saying that he did not mind the Court, and did not care for the Bible any more than for a spelling book." The challenge was objected to by the prisoner's counsel. Testimony, in support of the challenge, by one witness was, that he was a juror with the person challenged, on the trial referred to, at the term of the Court then existing; that the jury were out all night—that in the morning, the said person took up the Bible, and said that he was "a Tom Paine man, and would as lief swear on a spelling book as on that."

Another witness testified that the person then challenged was a juror in this Court about a year before; and on that occasion he had said to the witness that he had tried to acquit any one the *ju*dge desired to have convicted.

The Court sustained the challenge, and the challenged person was discharged.

The deputy sheriff then proceeded to call from the special *venire* and called Robert Steen, who was challenged by the Commonwealth for cause, and being sworn on his *voir dire,* was examined, and the challenge was withdrawn. The defendant, on being referred to as to the juror last called, stood mute, and the juror was empannelled.

Thereupon, on motion of the District Attorney, the Court, without the consent and against the will of the prisoner, dismissed the jurors empannelled, and the case at that time ended. The jurors had not been sworn or affirmed severally in the case.

At the next succeeding term, the indictment was ordered for trial, when the prisoner's counsel preferred certain special pleas, in which the facts before stated were in substance alleged. A replication was made denying their sufficiency because the jurors *had not been sworn.* A demurrer was filed, and the Court gave judgment for the Commonwealth. The prisoner stood mute as to

B

other pleas.  The Court had the plea of "not guilty" entered, and the prisoner was convicted of murder in the second degree.  Reasons in arrest of judgment were filed, which were overruled, and the prisoner was sentenced to imprisonment.

It was assigned for error, 1. The Court erred in giving judgment for the Commonwealth upon the defendant's demurrer.  2. In discharging the empannelled juror, against the prisoner's consent.  3. In dismissing the empannelled jurors, and continuing the case, against the prisoner's consent.  4. In permitting the prisoner to be tried a second time, he having been previously put in jeopardy of life and limb for the same offence.

*Webster* and *Phillips*, for plaintiff in error.—By the 153d section of the Act of 14th April, 1834, every person arraigned for murder or any other felony, is entitled to twenty peremptory challenges; while, by the 154th section, the Commonwealth is not to challenge *without cause.*

It was suggested whether it was not the duty of the Court to inquire of *the juror* and ascertain the state of his moral or religious feeling: 2 *W. & Ser.* 262, Cubbison *v.* McCreary; 4 *Whar.* 334, Quinn *v.* Crowell; 1 *Greenleaf*, sec. 369 & note; 4th sec., 9th Art. of the Constitution of Pennsylvania.

It was further contended that it was too late to dismiss the juror or discharge the juror after *a tales* had been awarded and returned. The *tales* was awarded to "fill up" the jury.  In opposition to the discharge, reference was made to the case of Commonwealth *v.* Cook, 6 *Ser. & R.* 577; Commonwealth *v.* Clue, 3 *Rawle* 498; Dunn *v.* Commonwealth, 6 *Barr* 384; Peiffer *v.* Commonwealth, 3 *Harris* 468; Doebler *v.* Commonwealth, 3 *Ser. & R.* 237. Though the jurors empannelled were not *sworn*, the prisoner was in the power of the Commonwealth for trial.  There must be *a necessity* for a discharge of the jury to authorize it: 2 *Grat.* 567, Williams *v.* Commonwealth.  If the jury in a capital case separate without returning a verdict, the prisoner shall not be again tried for that offence: State *v.* Garrigues, 1 *Haywood* 241; 1 *Inst.* 227; 6 *Missouri Rep.* 644, The State *v.* Spear.  It was said that the danger and peril of a verdict do not relate to a verdict rendered; that where the jury are empannelled and the indictment not defective, the life of the prisoner is in peril and jeopardy: 1 *Chitty's Criminal Law* 63.

*Reed*, District Attorney, contrà.

The opinion of the Court was delivered, July 25, 1853, by BLACK, C. J.—The defendant was indicted for murder, and,

[McFadden v. The Commonwealth.]

being found guilty of murder of the second degree, was sentenced to undergo an imprisonment in the Eastern Penitentiary.

On the trial in the Court of Oyer and Terminer, the prisoner pleaded that he had once before been in jeopardy of life for the same supposed offence, and that he had been acquitted. He set forth in his several pleas the particular facts as follows:—He had been arraigned before the same Court, on the same indictment, at a previous term, and pleaded not guilty. A jury was thereupon called; eleven jurors were chosen, and all the rest of the pannel challenged or set aside. A tales was awarded, but before the se-. lection proceeded any farther, and before any of the jurors were sworn, the District Attorney claimed the right to challenge (for cause) one of those already chosen. The Court permitted the cause to be shown, and sustained the challenge. When the twelfth juror was called, the prisoner refused to take any part in the selection; and the Court, on the motion of the District Attorney, dismissed the jurors, and postponed the trial to the following term.

To these pleas the Commonwealth replied that no one of the jurors had been sworn before they were dismissed; and, therefore, the prisoner was not acquitted or in jeopardy. To which replication the prisoner demurred.

The judgment of the Court on the demurrer, was against the prisoner, who, when called on to plead over, stood mute. The plea of *not guilty* was put in for him, and the trial proceeded with the result already mentioned.

If it can be legally said of the prisoner, that the proceedings at the first term after the indictment was found placed him in jeopardy, the subsequent conviction was wrong and should be reversed. Neither the constitution nor the rules of the common law will permit a man to be twice tried for the same offence.

It seems unnecessary to say that the mere continuance of a cause is within the discretion of the Court. Refusing it to a prisoner when he gives good reasons for it, or granting it to the Commonwealth without any reason at all, is neither a defence to the accused party when he comes to be tried, nor a legal assignment of error in this Court. But a discharge of the jury, in a capital case, after the trial has begun, is not a continuance of the cause. It is the end of it. And for all purposes of future protection, it is the same to the prisoner as an acquittal, unless it was done with his own consent or demanded by some overwhelming necessity: such, for instance, as the sickness or death of a juror.

When does the trial begin? Not properly until the jury is *charged* with the prisoner. But the practice of formally charging the jury is not generally observed in the Courts of this state, and we cannot refuse to a party any of the rights which he would otherwise have, merely because a form is omitted by the public

[McFadden *v.* The Commonwealth.]

officers. We must, therefore, hold that the jury has the prisoner in charge, when a full jury is empannelled, and all the jurors are sworn. Previous to this, everything that is done is merely preliminary, and up to this point the Court may postpone the trial as lawfully at one stage of the proceedings as at another.

To place a man in jeopardy, he must be in peril from the verdict of a particular jury. He cannot be so by the calling of eleven, for they can give no verdict, nor is he endangered by twelve unless they are sworn. Until they have taken the oath they are not jurors, and have no more control of his fate than any other equal number of citizens. His trial cannot begin until the tribunal which is to try him is organized and qualified. If he is in jeopardy at any earlier period, he is in jeopardy from the hour when the first informal accusation was made, and at every step of the subsequent proceedings against him. To say this, would be to assert what no ingenuity can reconcile with either authority or reason.

The prisoner's counsel cite The Commonwealth *v.* Clue, 3 *Rawle* 498, and rely much on a dictum of Chief Justice Gibson, who says: "In the legal as well as the popular sense, he (the prisoner) is in jeopardy the moment he is called to stand on his defence, for from that moment every movement of the Commonwealth is an attack upon his life." I call this a dictum, because the question before the Court was, whether a prisoner was in jeopardy whose jury had been discharged without giving a verdict *after* they were sworn. It was decided in the affirmative, and the case is authority for nothing more. But allowing this expression all the weight to which it would be entitled if it were on the point in controversy, what does it come to? At what moment of time is the prisoner called to stand on his defence? Certainly not until the Commonwealth is ready to begin the assault. The judge was using a figure borrowed from the *battel;* and the phrase "jeopardy of life or limb" was also used originally with reference to that mode of trial. In judicial combat, the parties took their attitudes of attack and defence when the judges were set, and, all preliminaries being adjusted, the actual conflict was ordered to commence. If this analogy has anything in it worth noticing, it is against the plaintiff in error. This decides the whole cause. Our duty is done when we determine whether the facts pleaded amount to a defence.

But the challenge of a juror after the District Attorney had waived his right, is complained of by the prisoner's counsel as a grievous wrong, while the District Attorney asserts, with equal confidence, that it is a great right. Both have argued it fully, and asked us to give our opinion. We will do so.

The right of the Commonwealth and that of the prisoner to challenge for cause stand upon the same ground. One is as sacred

[McFadden *v.* The Commonwealth.]

as the other.   It cannot be exercised after the juror has lifted up his right hand, or taken the book in obedience to the directions of the officer, or after the formula of the affirmation has been commenced.   In some of the states it is held that the juror is not beyond the reach of a challenge even when he is sworn.   These decisions are not supported by reasons satisfactory to us, and are opposed by certain principles which are well settled here.   But the mere passing of the juror over to the Court or the other party, is not an absolute waiver of the right to challenge, if good cause be shown afterwards.   This power to challenge for cause at any time before the oath is tendered might be abused.   If the objection to a juror be kept back at the regular time for an improper reason, or from motives of mere caprice, it would be just enough to declare the right wholly waived, and the discretionary power to do so ought not to be denied.   But instances of such bad faith are likely to be very rare; and submitting a cause to the determination of one who is known beforehand to be partial, corrupt, or incompetent, is so revolting to every sense of right, that no Court *can* do it without making a struggle to prevent it.   When it is proved against a juror by his own admission that he grossly misbehaved himself on a former occasion, declaring that he had tried to acquit every one whom the judge desired to convict, and would as lief swear on a spelling book as a Bible, because he was a Tom Paine man, we can see nothing wrong in sustaining the challenge.   It would destroy all confidence in the administration of justice if the most important criminal causes should have to be submitted to men who avow themselves reckless of both human and divine laws.   There is no stress of necessity which drives us to that: there is still a sufficient number of " good, true, honest, and lawful men" for jurors.   When a *witness* is objected to for defect of religious principle, the rule is to let him speak for himself, and if he professes faith enough to give a religious sanction to his oath, his testimony is taken.   The courts incline against the total exclusion of evidence on such grounds, because it seals up what is perhaps the only source of information.   The choice is very often between a doubtful witness and none.   It is, therefore, safer to let the objection go to his credit.   But there are no such reasons for tenderness in the case of *a juror*, where the worst consequence that results from his rejection, is that his place will be filled by a better man.   To be sure a juror, like every other person publicly assailed, ought to be heard in vindication of his character, and I suppose an appeal to the Court on that ground would hardly ever be made in vain.   But in this case the Court decided after hearing all that was offered. And they decided rightly.

Judgment affirmed.