# CASES

## IN

# THE SUPREME COURT

### OF

# PENNSYLVANIA.

## Hilands *versus* The Commonwealth.

1. A person is in jeopardy within the meaning of the Fifth Amendment of the Constitution of the United States and of Article 1, § 10, of the constitution of Pennsylvania, when a jury has been empanelled and sworn to try him upon a capital charge.

2. The discharge of a jury without the prisoner's consent after it has been sworn in a capital case, is allowable only in a case of absolute necessity; if it be made without such necessity, the discharge will operate as an acquittal.

3. A jury was sworn upon an indictment for murder, and by the consent of the prisoner was allowed to separate over night before the case had been opened to the jury; the next day, the court regarding this as an irregularity which the prisoner's consent could not cure, ordered the discharge of the jury and the empanelling of another; the prisoner objected to the empanelling of the new jury, and pleaded former jeopardy, which plea the court overruled. *Held* (a) that the plea should have been sustained; (b) that the separation of the jury did not give rise to such an absolute necessity as would justify the discharge, for if the trial had resulted in a conviction of an offence less than capital, the separation would not have been a fatal error.

October 12th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Oyer and Terminer, of *Mercer County;* October and November Term, 1885. No. 89.

James W. Hilands was indicted for the murder of John Rich; a true bill was found by the grand jury. The case was called for trial on the 12th day of March, 1885, and a jury was obtained and sworn on that day; after the empan-

1 AMERMAN—1

elling of the jury, it being 10.20 o'clock P. M., the court adjourned until the next day; the prisoner was remanded to jail and the jury was allowed to separate by consent of the defendant and of the Commonwealth. The next day, on the assembling of the court, the presiding judge, MEHARD, J., being of opinion that the separation of the jury before any steps had been taken in the case after the selection and swearing of the jury, was an irregularity to which the prisoner had no power to consent, discharged the jury and ordered another one to be sworn. Counsel for the prisoner at once objected to the selection of a new jury, and pleaded former jeopardy. The court overruled the plea—exception for defendant (1st assignment of error). The court, then, the defendant having been instructed that he had a right to challenge, ordered the calling of a new jury; the defendant made no challenges, and the clerk proceeded to call a jury until eleven were obtained, when it became necessary to call talesmen. The counsel for defendant filed the following objection: "A jury having been selected and sworn on this case and discharged without the consent of the defendant, the defendant objects to his trial by another jury selected from the same panel.

"And secondly, the defendant objects to his trial by a jury composed in part of the jury that had been formerly sworn and discharged in this case."

This objection the court overruled, and ordered the following entry on the docket:

"And now, March 13th, 1885. This objection having been filed after all the jurors complained of had been sworn, the prisoner not having challenged any of the jurors called on the ground that they or any of them had been sworn on the former jury, and every opportunity having been given to examine the jurors as to their qualifications, the second ground is not sustained.

"As to the other ground, the jury were discharged because a separation had been permitted with the consent of prisoner, as appears on record by minutes made by the court. Such discharge was therefore necessary under the law, and as the prisoner consented to the separation he cannot now take advantage of his own act. Therefore, objections not sustained." (2d assignment of error.)

The call of talesmen then proceeded, and a jury having been obtained, it was duly sworn and the trial proceeded; after the evidence had been given the defendant presented, *inter alia*, the following point:

"1st. That a jury having been regularly empanelled and duly sworn in this case, and afterwards discharged without the consent of the defendant, the defendant's life was in

[Hilands v. The Commonwealth.]

jeopardy, and therefore he must be acquitted by the present jury." The court refused this point. (3d assignment of error.)

The jury brought in a verdict of " Guilty of murder in the first degree." The defendant moved an arrest of judgment for the reasons, (1), that the court erred in not sustaining the defendant's objection to the trial before the second jury: (2), that the court erred in not sustaining the first point of the defendant; (3), that the records did not show the presence of the defendant during the trial at any time after the adjournment on March 12th, 1885, and did show his presence in court at the time the verdict was rendered.

The court, on April 13th, 1885, overruled the motion in arrest of judgment, and passed sentence of death upon the prisoner. The defendant took this writ assigning for error, *inter alia,* the overruling of the plea of former jeopardy, the overruling his objections to the trial before the second jury, the refusal of his first point and the overruling the motion in arrest of judgment.

*J. G. White* and *Stranahan* (with them *Bowser,*) for plaintiff in error.—As soon as the jury was sworn the prisoner was in jeopardy. The trial begins when the jury is charged with the defendant: Alexander *v.* Com'th, 15 W. N. C., 149; McFadden *v.* Com'th, 11 Harris, 12. A juror is charged with a prisoner when he has looked upon him and has taken the oath, for he cannot be withdrawn. Peiffer *v.* Com'th, 15 Pa. St. 468. Whenever the jury is charged with a prisoner, where the offence is punishable by death and the indictment is not defective, he is in jeopardy of his life: Com'th *v.* Cook, 6 S. & R. 577; Com'th *v.* Clue, 3 Rawle, 501; and see Kring *v.* Missouri, 17 Otto, 221. The discharge of the jury without the consent of the defendant, worked an acquittal, unless such discharge was a case of absolute necessity. See the opinion of TILGHMAN, C. J., and DUNCAN, J., in Com'th *v.* Cook, *supra,* and of BLACK, C. J., in McFadden *v.* Com'th, *supra.* This is not a case of necessity.

The consent of the prisoner's counsel to the separation of the jury was not a waiver of the prisoner's constitutional rights; he was incapable of giving a consent which would have that effect. Peiffer *v.* Com'th, *supra.*

*G. E. Patterson,* District Attorney, and *Cochran,* (with them *Stewart,*) contra.—The defendant raised no objection to the discharge of the first jury; this was an implied consent, and the consent to the separation was in effect an express consent to the discharge. As the law will not allow the sepa-

ration of a jury in a capital case, the discharge, after the separation had taken place, became an absolute necessity. The absolute necessity which will justify a discharge is the impossibility of proceeding with the trial with justice to the prisoner or the state. See DUNCAN, J., in Com'th *v.* Cook, 6 S. & R. at page 591; and see State *v.* Wiseman, 68 N. C. 203; Rex *v.* The Kinlochs, Fost. 16; Reynolds *v.* State, 3 Kelly, (Ga.) 63; Ned *v.* The State, 7 Port. 200. As to the objection to the selection of the jury from the second panel, the objection came too late: he had not made any challenge to the array until the panel was entirely exhausted, and he had consented to the sustaining of eleven jurors out of said panel: 1 Chitty Crim. Law (ed. 1832) pp. 544–5.

Chief Justice MERCUR delivered the opinion of the court, January 4th, 1884.

The main contention in this case arises under the first specification of error.

After a jury had been selected and sworn in the case, and had been discharged without the consent of the defendant, he objected to the selection of another jury, and plead former jeopardy. The court refused to sustain the plea.

Art. V. of the Amendments to the Constitution of the United States, *inter alia*, declares, "nor shall any person be subject, for the same offence, to be twice put in jeopardy of life or limb."

Art. I. sec. 10, of the Declaration of Rights in the constitution of Pennsylvania, declares "no person shall for the same offence, be twice put in jeopardy of life or limb."

This declaration of individual protection is not new to the people of this commonwealth. The identical language was in the constitution of 1790. It was retained in the amended one of 1838, and is repeated in the present constitution.

It will be observed that the constitutional prohibition does not declare that a person shall not be twice tried for the same offence which involves his life or limb; but that he shall not be twice put in jeopardy.

At what step in the prosecution is a person put in jeopardy, to which he shall not be subjected the second time for the same offence? Undoubtedly when the trial begins in which he is charged with a capital offence. That begins when the jury is charged with the prisoner. It is so charged as soon as the twelve jurors are duly empanelled and sworn. They are sworn well and truly to try and true deliverance make between the commonwealth and the prisoner whom they have in charge. The trial has then begun. The prisoner stands before them as his judges, with his life in their hands: Commonwealth *v.*

Cook *et al.*, 6 S. & R. 578; Same *v.* Clue, 3 Rawle, 498; Peiffer *v.* Commonwealth, 3 Harris, 468; McFadden *v.* Same, 11 Id. 12; Alexander *v.* Same, 9 Out. 1.

The jury are not only the judges of the facts in such a case, but also of the law. If they find the prisoner not guilty, although in clear mistake of the law, no court can review the correctness of that verdict and again put him in jeopardy for the same offence. Whether the verdict be on the commonwealth declining to give any evidence, or whether it be after a protracted trial and the testimony of many witnesses, the judgment thereon is equally conclusive.

In the present case, the court, of its own will and action, discharged the jury, after it had been duly sworn, empanelled, and charged with the prisoner. His consent thereto was neither given nor asked for.

This action of the judge was induced by the fact that, after the jury had been so duly charged, he had, on the previous evening permitted it to separate by consent of the prisoner and of the commonwealth.

The question now is, Did that separation authorize the court to discharge that jury, and put the prisoner on trial before another jury on the same indictment?

When the second jury was about to be called and the prisoner informed of his right of challenge, his counsel filed a plea of former jeopardy. The court overruled the plea, holding that inasmuch as the discharge of the jury was by reason of its separation with the consent of the prisoner and the commonwealth, he could not on that account plead former jeopardy, and therefore refused to sustain the plea.

No complaint is now made that the jury was permitted to separate; but the claim is that the separation did not impair the conclusive effect of their discharge. In other words, that the discharge from the first jeopardy was not under such an extreme and overwhelming necessity, as to justify an entire disregard of the constitutional protection guaranteed to every person.

The decisions of the different states are not in entire harmony, as to the power of the court to discharge a jury, after it is sworn in a criminal case. In some of them no clearly defined distinction appears to have been made between capital offences and those of lesser grade. It is not necessary to cite them. In our own state we have a line of cases applicable to the discharge of a jury in capital offences, which controls the case.

We will refer to some, and to the opinions of the able Judges in deciding them: Commonwealth *v.* Cook *et al.* (*supra*) was a capital case, in which the court, without the

consent of the prisoner, had discharged the jury by reason of their inability to agree on a verdict. The opinion is by Mr. Chief Justice TILGHMAN. He reviews the English decisions prior to the Revolution, and the American cases since, which relate to the power of the court to discharge a jury after they are sworn in a capital case, and then says: "I grant that in case of necessity they may be discharged; but if there be anything short of absolute necessity, how can the court, without violating the constitution, take from the prisoner his right to have the jury kept together until they have agreed, so that he may not be put in jeopardy a second time?" He further adds: "I think myself safe in asserting that there is no evidence of any instance since William Penn obtained his charter from Charles II., in which a jury was discharged without the consent of the prisoner, in a capital case." He closes his opinion by saying: "For my own part, thinking that their blood would be upon us if they were convicted of murder in the first degree on a second trial in this court, I am of opinion that they should be discharged from this indictment."

Mr. Justice DUNCAN also filed an opinion entirely concurring with the Chief Justice, and adds: "There is, at this day, a settled and uncontroverted rule, that in case of life or member, a jury sworn and charged, cannot be discharged before they give a verdict, unless with the consent of the prisoner, and where it is for his benefit, or in cases of extreme necessity, and if a jury is otherwise discharged, it clearly amounts to an acquittal of the prisoner."

The correctness of the law, as declared in Commonwealth *v.* Cook *et al.*, was affirmed in Commonwealth *v.* Clue (*supra*) in an opinion by Mr. Chief Justice GIBSON. In discussing the justice and reason of the rule he says: "Why it should be thought that the citizen has no other assurance than the arbitrary discretion of the magistrate for the enforcement of the constitutional principle which protects him from being twice put in jeopardy of life or member for the same offence, I am at a loss to imagine. If discretion is to be called in, there can be no remedy for the most palpable abuse of it, but an interposition of the power to pardon, which is obnoxious to the very same objection? Surely every right secured by the constitution is guarded by sanctions more imperative." In that case the first jury had been discharged, without the consent of the prisoner, by reason of the sickness of two of the jurors. This court, thinking the illness was produced by reason of the jurors being kept without food or refreshment, and believing if the same had been furnished the health of the jurors would have been sufficiently restored, held there was

no sufficient cause for their discharge, and that it was a bar to a second trial for the same offence.

McFadden *v.* Commonwealth (*supra*) was also a capital case. In the opinion of the court, by Mr. Chief Justice BLACK, he says: "A discharge of the jury in a capital case, after the trial has begun, is not a continuance of the cause. It is the end of it. And for all purposes of future protection it is the same to the prisoner as an acquittal, unless it was done with his own consent, or demanded by some overwhelming necessity, such, for instance, as the sickness or death of a juror."

In Peiffer *v.* Commonwealth (*supra*) Mr. Chief Justice GIBSON declared that " even the forms and usages of the law conduce to justice." The people of this commonwealth, in all of its organic laws, and with great tenacity, have applied this rule to trials by jury. Thus the constitution of 1776, framed by the convention over which Benjamin Franklin presided, declared " trials shall be by jury as heretofore." As if to emphasize the thought, and make the right more secure, the constitution of 1790 changed the language, and declared "that trial by jury shall be as heretofore, and the right thereof remain inviolate." These precise words were retained in the constitution of 1838, and are repeated in the constitution of 1874. The question is, Was it error to overrule the prisoner's plea of former jeopardy, when he was called before the second jury? It may be conceded that a person on trial for a capital offence ought not to be asked to consent to a separation of the jury: Peiffer *v.* Commonwealth, *supra*. To this conclusion the court came on the next day after permitting them to separate. The prisoner had not withdrawn his consent to that separation. He had not, and did not, interpose any objection to the continuance of his trial before that jury. If it had gone on before them, and he had been convicted of murder in the first degree, *non constat*, that he would have assigned that separation to avoid the effect of the verdict. The commonwealth could not.

Under the indictment it was within the power of the jury to acquit the prisoner of murder, and to find him guilty of voluntary manslaughter only. If such were the verdict, and the prisoner assigned for error to the judgment the separation of the jury, we would apply the same rule that should be applied in case he had been indicted and tried for manslaughter only: Moss *v.* Commonwealth, 15 Pitts. Leg. Jour., N. S., 107. It is neither proven nor alleged that the jurors were subjected to any improper influence during their separation. If the conviction had been for the lesser grade, the separation of itself alone would not have been a fatal error.

[Hilands *v.* The Commonwealth.]

We are not able to understand how the consent of the prisoner to the separation of the jury from evening until morning justified their subsequent discharge. If his consent gave any validity to the separation, it remained in full force. He had not in any manner attempted to supersede or impair its effect. If his consent was of no validity, then the error in permitting the separation was that of the court, and the prisoner was not responsible therefor.

The discharge of the jury was not caused by any improper conduct of the prisoner during the trial. He did not consent to it. It was the action of the court alone, and to retrieve what the court thought was its previous error. If the right to discharge the jury for an error made by the court existed at that stage of the trial, we cannot see why the same right might not again be invoked, if a similar error had been committed near the close of the trial. If the right to so discharge be conceded to exist, then a person may, for the same offence, be put in jeopardy of life for an indefinite number of times.

The great safeguard which the organic law has thrown around the prisoner cannot thus be set at nought, to correct any error committed by the judge during the trial of the cause. Under all the facts in this case, we cannot concede any discretionary power in the court to thus strike down the constitutional right of every person on trial for a capital offence. It is better that one guilty man escape than to disregard the mandate of the constitution, and establish a precedent which might result in many unjust convictions in the future.

The language of the constitution is imperative. The ablest judicial minds which have administered the law in this commonwealth, have emphasized its protecting power. Yielding, then, to the clear command of the former, and adopting the construction put upon it by our predecessors on this bench, we do not find that the first jury was discharged under such extreme and overwhelming necessity, as to subject the prisoner to be again put in jeopardy of his life for the same offence. It was clear error not to sustain the plea of former jeopardy, and also in putting the prisoner on trial before another jury for the same offence. He should have been discharged from the indictment.

The conclusion at which we have arrived makes it unnecessary to consider the other specifications of error.

> Judgment reversed, and it is further ordered that the record be remanded with this opinion setting forth causes of reversal, to the Court of Oyer and Terminer of the county of Mercer for further proceedings.

GORDON, J., dissents.