## Commonwealth, Appellant, v. Simpson.

Argued September 25, 1932.   Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Charles C. Gordon,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellant. —The Commonwealth may appeal from an order of the court below overruling its demurrer to defendant's plea of former jeopardy: Com. v. Kolsky, 100 Pa. Superior Ct. 596; Com. v. Wallace, 114 Pa. 405.

Where a jury is discharged in a capital case before rendering a verdict, the Commonwealth subsequently may try the defendant on the same bill of indictment for a degree of homicide less than murder of the first degree: Com. v. Clue, 3 Rawle 498.

The constitutional prohibition against being twice put in jeopardy of life or limb applies only to capital cases: McCreary v. Com., 29 Pa. 323; Com. v. Commander, 10 Pa. 275.

*Malvin H. Reinheimer,* with him *Domenic Furia,* for appellee.—The Commonwealth has no right to appeal from the action of the court of quarter sessions overruling a demurrer to a plea of former jeopardy.

Commonwealth's right to appeal was considered in Com. v. Capp, 48 Pa. 53; Com. v. Moore, 99 Pa. 570; Com. v. Kolsky, 100 Pa. Superior Ct. 596.

The prisoner was in jeopardy when the juror was withdrawn: Alexander v. Com., 105 Pa. 1.

Having been in jeopardy, the prisoner cannot be again tried for murder or for voluntary manslaughter: Com. v. Cook, 6 S. & R. 577; Com. v. Greevy, 271 Pa. 95; Com. v. Kellyon, 278 Pa. 59; Highlands v. Com., 114 Pa. 372.

OPINION BY MR. JUSTICE SCHAFFER, February 1, 1933:

The Commonwealth appeals from an order of the court below overruling its demurrer to a plea of former jeopardy entered by defendant to an indictment for murder on which he was about to be tried, giving judgment for

him on the plea and discharging him from the indictment.

The first question which confronts us is the right of the Commonwealth to appeal, defendant contending that it has no such right, citing in support of his position the authorities set forth in the note.* The criminal law must move forward to meet the new conditions which confront organized society if its law-abiding members are to be protected in their personal and property rights. Whatever the rule may have been in past decades, we think now when there is such wide latitude allowed those convicted of crime to appeal and have their convictions reviewed, there should be a liberalizing of the attitude towards the Commonwealth, where the defendant has been convicted, and the question ruled against the Commonwealth, as here, is purely one of law. This is what we intended when we said in Com. v. Wallace, 114 Pa. 405, 411, "For error in quashing an indictment, arresting judgment after verdict of guilty, *and the like,* the Commonwealth may remove the record for review without special allowance of the proper writ." By the words "and the like," we meant cases in which the ruling is against the Commonwealth on pure questions of law. Our determination, therefore, is that the Commonwealth has the right to appeal. This was the conclusion reached by the Superior Court in Com. v. Kolsky, 100 Pa. Superior Ct. 596.

---

* 2 Bishop's Criminal Procedure, section 1272; State v. Lane, 78 N. C. 547; 1 Bennett & Heards Leading Criminal Cases, 610; People v. Corning, 2 Coms. (N. Y.) 1; Com. v. Cummings, 3 Cush. (Mass.) 212; State v. M'Kee, 1 Bailey (So. Car.) 651; State v. Leunig, 42 Ind. 541; O'Brian v. Com., 9 Bush. (Ky.) 333; State v. Smith, 49 Kansas 358; United States v. Sanges, 144 U. S. 310; Com. v. Capp, 48 Pa. 53; Com. v. Moore, 99 Pa. 570; Com. v. Taylor, 5 Binney 277; Com. v. McKisson, 8 S. & R. 420; Com. v. Parr, 5 W. & S. 345; Com. v. Church, 1 Pa. 105; Heikes v. Com., 26 Pa. 513; Com. v. Bartilson, 5 W. N. C. 177; Com. v. Wallace, 114 Pa. 405; Com. v. Long, 276 Pa. 154; Com. v. Ahlgrim, 98 Pa. Superior Ct. 595; Com. v. Kolsky, 100 Pa. Superior Ct. 596.

This brings us to the second question: Where a defendant has been put upon trial on an indictment charging murder, the jury sworn, and before verdict, without the defendant's acquiescence, or any absolute necessity so to do, the jury has been discharged, may the defendant, pleading former jeopardy, be tried again on the same indictment? That he may not be for first degree murder is conceded and beyond question, as he would then again be in jeopardy of life. May he be tried again for the lesser offenses comprehended in the indictment, murder of the second degree and voluntary manslaughter? The question is not free from difficulty.

The provision of Pennsylvania's Constitution, article I, section 10, and the Constitution of the United States, are substantially the same. Ours reads: "No person shall, for the same offense, be twice put in jeopardy of life or limb." What is connoted by the words "or limb" is the direct inquiry we are to make. It cannot be gainsaid that there are cases which rule that the defendant cannot again be tried on the murder indictment for any offense. It will not profit anything to carry the investigation of authorities beyond our own border.

Apparently none of the prior cases in this jurisdiction presents, on its facts, the precise question now before us. May a defendant be tried a second time on an indictment charging murder when the Commonwealth seeks conviction not for murder of the first degree but for murder of the second degree or manslaughter only? In Hilands v. Com., 111 Pa. 1, the jury in a murder case after being sworn was discharged by the trial judge. The defendant was again arraigned *and convicted of first degree murder*. It was held that this was double jeopardy as he had twice been put in jeopardy of life. In Com. v. Fitzpatrick, 121 Pa. 109, on the first trial, the Commonwealth did not press for a conviction of murder of the first degree. The court instructed the jury that the evidence would not warrant a conviction of that crime, that they could not find a higher verdict than murder of the

second degree. The jury having reported their inability to agree, the court discharged them. The defendants,—being called for a second trial upon the same indictment (the report does not show whether the Commonwealth intended asking a first degree verdict), defendants' counsel filed a special plea in which was set forth at length the proceedings had after the arraignment and general plea, and averring that the defendants then pleading were the same persons theretofore tried upon the indictment,—prayed to be discharged from the same. The Commonwealth demurred to the plea. The trial court entered judgment in favor of the defendants on the demurrer and the Comomnwealth appealed. This court affirmed. Whether it would have done so if the Commonwealth had disclaimed a purpose to demand a first degree verdict, we cannot know. In Com. v. Tenbroeck, 265 Pa. 251, the defendant was indicted and tried for murder, and convicted of and sentenced for murder of the second degree. Pending the trial, the jury was permitted to separate, which, it was urged, compelled a reversal. We said (page 256), "As the conviction was of the second degree the case ceased to be a capital one and the temporary separation of the jury, of which complaint is made, becomes unimportant."

White on the Constitution of Penna., page 107, has this to say: "The first observation to be made concerning the clause in question is that it applies only to capital cases. This was not the fact anciently, when punishment might take the form of mutilation of one's members, or their endangerment, as in trials by battle, for, in such cases, when placed on trial he was in jeopardy of his limbs without also being in jeopardy of his life. The cases in which the protection of the clause may be invoked are those in which, at the time the crime was committed, it was punishable by death. Thus, crimes which at common law were capital, but which under our statutes are not so punished, are not within the meaning of the provision. If at some future time the punishment

for murder should be made life imprisonment in all cases, the clause in question would be of no service, except because of the possibility of a return to capital punishment." For these latter statements there is the express authority of McCreary v. Com., 29 Pa. 323, 326.

Moreover, the language of the constitutional provision is clear and unambiguous. "No person shall for the same offense be twice put in jeopardy of life or limb," can only mean that no one shall be tried a second time for an offense the punishment of which may result in the taking of his life or injury to his limbs. Plainly, the language itself compels this conclusion; abnormality in its use is required before any other can be reached.

While not necessary to the decision of the point involved, it was said by Mr. Justice PAXSON, speaking for the court, in Hilands v. Com., supra, that a defendant in a capital case can never be tried again upon a charge of which he might have been convicted upon his arraignment, and this view can be found in other cases. It is said in some of them that the words "or limb" are a term of art generically signifying certain crimes,—the major felonies. But the fact—the reality of the matter—is that there is now no jeopardy of limb, as there was when the expression first came into the law, when most, if not all, of the major felonies were punishable with death or mutilation. The words to-day, so far as punishment is concerned, are without application to anything which exists. This being so, should a far fetched meaning and effect be given to them? In administering the criminal law, should we, by sticking in the bark of an old expression, bring about the anomaly that if a man be indicted for murder and be put upon trial and the jury is improperly discharged before verdict, he is to be set scot free, although his actual offense, as the proofs showed, rose no higher than manslaughter; whereas if the indictment in the first instance had been drawn for manslaughter, he could be tried upon it again? Where sound reason backs the ruling, we feel constrained to lop off dead limbs from

the trunk of the criminal law and thus give the tree greater vitality in its living branches.

Some of our cases give color to the thought that the court, in much earlier decades, had reached the conclusion only that he could not again be tried for first degree murder, and that there was no reason for the rule that the prisoner should be completely discharged when he had once been put upon trial under an indictment for murder and upon a second arraignment pleaded former jeopardy. Thus in McCreary v. Com., supra, the defendants were being tried for burglary. When it appeared the jury was unable to agree on a verdict, it was discharged; subsequently the accused were again put on trial. Their defense was former jeopardy. The plea was overruled and they were convicted. We affirmed the sentence, in the opinion making it clear that the constitutional provision applied only to capital offenses, saying: "It is not denied that the clause applies to cases of felony of death; but no case has been cited showing its application to crime of an inferior grade. . . . . . . It [the constitutional provision] is not so inexorable as to shut out a practical construction demanded by necessity, and the safety of the community. . . . . . . That it applies to capital cases is on all hands conceded, for both 'life and limb' are there in jeopardy. But this cannot be said when imprisonment alone is the punishment. There life is surely not jeopardized. But if the construction asked for be tolerated, that where imprisonment places 'life or limb' in jeopardy, convictions for assault and battery might with equal propriety be embraced. Why the words 'life and limb' were used originally in the same connection would now, perhaps, be more curious than useful to inquire. We find them coupled together in the Constitution, and all we can do is to give them a rational and practical interpretation." In McFadden v. Com., 23 Pa. 12, 16, Chief Justice BLACK, in considering the term "jeopardy of life or limb" had this to say: "The judge was using a figure borrowed from the _battel;_ and

the phrase 'jeopardy of life or limb' was also used originally with reference to that mode of trial. In judicial combat, the parties took their attitudes of attack and defense when the judges were set, and, all preliminaries being adjusted, the actual conflict was ordered to commence." It would seem the limit of unreason in this enlightened age so to interpret the law as to keep alive in it a term which was incorporated therein to meet the situation existing when trial by battle was practiced.

It is true the Supreme Court of the United States has declared that by the use of the phrase "life or limb" in the Constitution of the United States, protection against double jeopardy is extended to all criminal offenses. It was so held in Ex Parte Lange, 18 Wallace 163. We have not followed this extreme view, but have permitted the retrial of offenses after juries have been discharged, although such an outcome could not be brought about under the federal interpretation. This ruling is not binding upon us, because the provision in the United States Constitution is a limitation upon the powers of the federal government and is not a limitation upon the states: Brantley v. Georgia, 217 U. S. 284. The view which we are now taking, it may be admitted, was not that entertained by the court in Com. v. Fitzpatrick which followed Hilands v. Com. We think, however, our present construction comports more with sound public policy and with the necessity, now existing in dealing with law-breakers, for a reasonable interpretation of the criminal law. Hilands v. Com., 111 Pa. 1, and Com. v. Fitzpatrick, 121 Pa. 109, are overruled, so far as they are in conflict with this opinion.

The order of the court below is reversed, the demurrer of the Commonwealth is sustained in part, the plea of defendant is sustained so far as first degree murder is concerned, as to all other charges the plea is overruled and the indictment against him is reinstated, limited to a trial for offenses other than first degree murder. Costs to be paid by appellee.

DISSENTING OPINION BY MR. JUSTICE MAXEY:

I dissent from the order reinstating the indictment and permitting the defendant to be retried thereon for murder of the second degree and for manslaughter. Heretofore this court has uniformly held that when a defendant is called to answer an indictment charging murder, and the jury is sworn, and then, before verdict is rendered, the jury is, without the defendant's consent and without any absolute necessity, discharged, the defendant cannot again be tried on the same indictment if he has interposed the plea of former jeopardy. The Commonwealth concedes that the defendant in such a case may not again be put on trial for first degree murder but it contends that defendant may be tried again on the same indictment for murder of the second degree and voluntary manslaughter. Its reasoning would equally support the conclusion that a defendant could again be tried for murder of the first degree, provided the jury was instructed that the Constitution forbade the infliction of the death penalty after such a second trial.

This court for over a century has negatived the Commonwealth's present contention. In Com. v. Fitzpatrick, 121 Pa. 109, 15 A. 466, we said that the defendants who had been again called to trial for murder, and a jury sworn, had a right to say, "We have been once put in jeopardy for this crime and we cannot be compelled to undergo the same peril a second time for the same offense." We declared such a plea to be "unanswerable." The Commonwealth did not in the trial of that case press for a conviction of murder in the first degree, and the court instructed the jury that there was no evidence to support a verdict of murder in the first degree. The court later discharged the jury for failing to agree. This court held that the discharge of the jury barred a subsequent trial on the same indictment.

In Hilands v. Com., 111 Pa. 1, 2 A. 70, this court said in referring to the discharge of the jury in a capital case before a verdict was rendered: "The discharge of the

jury was not caused by any improper conduct of the prisoner during the trial. He did not consent to it. It was the action of the court alone, and to retrieve what the court thought was its previous error. ...... The language of the Constitution is imperative. The ablest judicial minds which have administered the law in this Commonwealth, have emphasized its protecting power. Yielding, then, to the clear command of the former, and adopting the construction put upon it by our predecessors on this bench, we do not find that the first jury was discharged under such extreme and overwhelming necessity as to subject the prisoner to be again put in jeopardy of his life for the same offense. It was clear error not to sustain the plea of former jeopardy, and also in putting the prisoner on trial before another jury for the same offense. He should have been discharged from the indictment."

In McCreary et al. v. Com., 29 Pa. 323, this court said after citing the constitutional provision that " 'No person shall, for the same offense, be twice put in jeopardy of life or limb.' ...... It is not denied that the clause applies to cases of felony of death; but no case has been cited showing its application to crime of an inferior grade." Yet in that very case this court said it was now settled "that the discharge of a jury in a capital case, against the consent of the prisoner, works his acquittal" except "where the prisoner has tampered with the jury, or has contrived to keep back the witnesses for the prosecution, or the prisoner during the trial becomes insane, or where a juror dies." It should also be noted that the defendant in that case was charged not with murder but with burglary.

From time immemorial a "capital case" has meant a case in which as a result of a permissible verdict in the case the death penalty might be imposed, and it has been the uniformly adhered to rule in Pennsylvania that when a prisoner has been called to answer an indictment on which he might be found guilty of a crime punishable by

death, the jury cannot be discharged without the defendant's consent except by reason of an overwhelming necessity. In Com. v. Cook, 6 Sergeant & Rawle 577, which was decided 110 years ago, Chief Justice TILGHMAN questioned the expediency of giving courts the power to discharge juries in "capital cases," except for overwhelming necessity. He said: "There is strong proof of its not being necessary from the fact of its never before having been exercised in Pennsylvania." In that case this court ordered the discharge of three prisoners called for a second trial on an indictment charging murder. The jury in the first trial had been discharged because of their inability to reach a verdict as to the guilt of one of the defendants though they had agreed as to the guilt of two of them. The court refused to permit the jury to pronounce the verdict which they had agreed upon as to two defendants, and without and against the consent of the prisoners the jury were discharged by the court. A new indictment for the same murder having been found by the grand jury, the three prisoners were then arraigned, they pleaded a special plea in bar, which stated the proceedings of their former trial, and insisted that they were in law equivalent to an acquittal and discharge. The attorney-general demurred and the prisoners joined in demurrer. Their counsel moved for their discharge from the indictment. If these prisoners could have been constitutionally put on trial for murder in the second degree or for voluntary manslaughter after the jury in the first trial had been discharged without their consent and without necessity, there was no reason why this court should not have ordered them tried at least for second degree murder or voluntary manslaughter on either the old indictment or the new indictment. Article IX, section 10, of the Constitution of 1790 declared that "no man shall for the same offense be twice put in jeopardy of life or limb." Chief Justice TILGHMAN and Justices GIBSON and DUNCAN (being this entire court at that time) in Com. v.

Cook, supra, interpreted that declaration of right as meaning that when a prisoner is called to answer an indictment for murder and the jury is discharged against his consent and without any overwhelming necessity, the prisoner cannot again be called for trial on that indictment or upon any other indictment for the same murder and that he must be absolutely discharged from custody. Chief Justice TILGHMAN said in that case: "I think myself safe in asserting that there is no evidence of any instance since William Penn obtained his charter from Charles II, in which a jury was discharged without the consent of the prisoner in a capital case." He expressed himself as being opposed to a change in this law, and stated (page 587), after setting forth arguments against a change: "These are some of the reasons which induce me to doubt whether any good would arise from a change in the law, if the court had power to change it, which it certainly has not."

It is contended that the term "jeopardy of life or limb" is a phrase that had its origin in the ancient trial by battle, in which both "life *and* limb" were jeopardized, and it is argued that the law should not be so interpreted as to give effect to a term which was incorporated therein to meet a situation no longer existing. The answer to this is that trial by battle was never resorted to in Pennsylvania and was practically obsolete in England long before the first Constitution of Pennsylvania was adopted. Obviously Justices TILGHMAN, GIBSON and DUNCAN did not have trial by battle in mind when, in the case of Com. v. Cook, supra, they decided that the constitutional inhibition against putting a person twice in jeopardy for the same offense required the complete discharge from the indictment for murder (which, of course, included voluntary manslaughter) of prisoners who had once been tried on the same indictment by a jury which was discharged by the court before a verdict was rendered, and without the prisoner's consent and without there being any absolute necessity for the dis-

charge. The language of Chief Justice Tilghman in that case was: "How can the court, without violating the Constitution, take from the prisoner his right to have the jury kept together, until they have agreed, so that he may not be put in jeopardy a second time?"

Justice Duncan in his concurring opinion in that case said: "Whenever the jury are charged with a prisoner, where the offense is punishable by death, and the indictment is not defective, he is in jeopardy of his life...... While they are deliberating whether he shall live or die, can it be said that his life is not in jeopardy? His chance of life fluctuates during their deliberation; but his hopes of life are increased by the knowledge that the jury finds his case one of difficulty. He had heard the judge inform them, if they doubted, they must acquit; when the jury come in, and are asked whether they are agreed on their verdict, this is to him an awful moment. When they say they have not agreed, and they cannot agree, he is entitled to all the benefit of their doubts and difficulties, and to say to the court, 'I have put myself on trial, for life or death, on these twelve men; I will not agree to be again put in jeopardy; I will take this chance, sooner than undergo the pain and anxiety of another trial.' ...... Prisoner discharged."

A defendant called for trial on an indictment charging murder is facing an ordeal possibly as great as the ancient ordeal by battle, and when the Commonwealth calls for trial a person so charged and the jury is selected and sworn, the district attorney should not be permitted, whenever it appears to his official advantage to do so, to bring about a mistrial, unless he is prepared to face the fact that such mistrial will end all prosecution on that indictment. Under the Constitution of this State as this court has consistently interpreted it, a trial judge cannot discharge a jury sworn in a capital case, unless the prisoner consents or unless such action is demanded by what this court has recognized as "absolute necessity," without at the same time discharging the de-

fendant from all further prosecution on the same indictment.

In view of the fact that on an indictment charging murder, the defendant named therein may be convicted of murder of the first degree or of murder of the second degree, or of voluntary manslaughter, it follows under our former decisions that the unwarranted discharge of the jury in a case in which the defendant is charged with murder bars another trial of the same defendant for any offense of which he might have been convicted on the indictment. As it is expressed in 8 R. C. L., pages 153, 154, section 142: "In the absence of necessity the defendant may reasonably demand that the result be regarded as an acquittal, and this applies to every offense charged in the indictment and on which the jury might have returned a verdict if they had not been discharged." Sadler in Criminal Procedure in Pennsylvania, section 347, page 337, says: "A discharge without necessity will prevent further prosecution."

An appellate court occasionally expressly overrules its former decision to meet some profound change in social or economic conditions, but no case has come to my attention where this court has heretofore overruled its long consistently adhered to interpretation of a declaration of individual right imbedded in the state Constitution. When the true meaning of a constitutional provision is officially determined by a court of last resort, that interpretation becomes in legal effect a part of the Constitution and should be changed only by the method the Constitution itself prescribes. Pruning the Constitution is not a judicial function. The United States Supreme Court said in South Carolina v. United States, 199 U. S. 437, at page 448: "The Constitution is a written instrument. As such its meaning does not alter. That which it meant when adopted it means now." Cooley in his Constitutional Limitations, 8th edition, volume 1, page 124, said: "A principal share of the benefit expected from written constitutions would be lost if

the rules they established were so flexible as to bend to circumstances or be modified by public opinion. ......
What a court is to do, therefore, is to declare the law as written, leaving it to the people themselves to make such changes as new circumstances may require. The meaning of the constitution is fixed when it is adopted, and it is not different at any subsequent time when a court has occasion to pass upon it." 6 R. C. L., page 46, section 39: "Constitutions do not change with the varying tides of public opinion and desire. The will of the people therein recorded is the same inflexible law until changed by their own deliberative action."

The provision against double jeopardy of life or limb has been in each successive Constitution adopted by the people of this Commonwealth. This provision received interpretation from great jurists of this court after the first Constitution was adopted and before later ones were adopted. It is a legitimate assumption that the framers of the Constitution (many of them able lawyers) under which our state government is now functioning, knew the exact meaning judicially given this provision in earlier Constitutions and by reinserting it with its ancient text unaltered in the Constitution of 1873, accepted it with the meaning TILGHMAN, GIBSON and other justices speaking for this court had given it. That meaning was that in a situation precisely like the one now before us, after an unnecessary mistrial in a capital case the order of the court should be: "Prisoner discharged from the indictment." This interpretation I would not now depart from.

"The meaning of constitutional provisions is fixed at the time of their adoption, and the construction given them must be uniform, so that the operation of the instrument will be inflexible, operating at all times alike, and in the same manner with reference to the same subjects:" 12 C. J., page 718, section 72.

I cannot find the slightest justification now for giving to the constitutional guarantee of individual rights em-

phatically expressed in article I, section 10, of the Constitution of 1873 (as in the Constitutions of 1776, 1790 and 1838) an interpretation utterly different from the one which for more than a hundred years this court has given it and which all other courts in the State in administering the criminal law have accepted and followed without doubt or question.

Mr. Chief Justice FRAZER and Mr. Justice KEPHART joined in this dissent.