## Commonwealth v. Day et al.

*Karl E. Richards,* district attorney, and *A. Ross Walter,* for Commonwealth.
*Caldwell, Fox & Stoner,* for defendants.

HARGEST, P. J., September 26, 1933.—This case has been tried twice and was the subject of two previous opinions, due to the uncertain way in which the writer, as the trial judge, submitted it to the jury upon the first trial.

The defendants were charged with the fraudulent conversion of an automobile and the proceeds thereof, and also with larceny by bailee of that car. At the first trial, held December 11, 1929, it appeared that the defendants were part-

ners in the automobile business. On January 2, 1929, Harry A. Hartzell, prosecutor, purchased from the defendants an Auburn cabriolet automobile, giving in payment a Studebaker car and $1,000 in cash. A few days later, the manager of the defendants told Hartzell that they had a quick sale for a car like the one Hartzell had bought, to a man by the name of Long, who wanted to go to Florida, and that they were unable to secure a car for him. He asked Hartzell to turn back his car to the company so that it could be sold to Long, and said that the company would procure a new car for him within a week. Hartzell agreed, provided they would get him a car within a week, delivered the title to the car which he had bought, and surrendered it. The new car was never delivered to Hartzell. Repeated demands were made for it, as well as for the return of the money, but neither the car nor the money was given to him. The evidence showed considerable indifference on the part of the defendants about making good to Hartzell. When the Commonwealth's case was closed on the first trial, counsel moved the court to give binding instructions for acquittal. That motion was refused, and at the close of the case, before the charge, counsel again moved the court to "give the jury binding instructions to acquit." The court said:

"We will not submit to this jury the question of fraudulent conversion, but we will submit to the jury the question of larceny by bailee as to both defendants."

During the charge the court said, in part, as to fraudulent conversion:

"They did not fraudulently withhold and convert his car, because he had surrendered the title to it. They had the money of Hartzell, but that money was not the proceeds derived from the sale or other disposition of Hartzell's car, it was the money which he had paid for the car, and therefore under the law we instruct you that no offense has been made out on the first count of this indictment.

"The second count charges the defendants with having become bailee of moneys belonging to Hartzell, which they did fraudulently and feloniously take and convert to their own use, and that case we are submitting to you."

At the end of the charge, counsel said:

"If the court please, as I understand then, the jury is directed to return a verdict of not guilty upon fraudulent conversion, and the second count of larceny by bailee is submitted to them for consideration."

The court replied: "I think I made that clear."

The jury rendered a verdict of "guilty of larceny by bailee", nothing being said in the verdict about fraudulent conversion. A motion for a new trial was made on the ground that the court erred in overruling the motion for binding instructions to acquit and in submitting the question of larceny by bailee to the jury. The district attorney, as well as private counsel for the Commonwealth, being of opinion that the court erred and that the Commonwealth could make out a case of fraudulent conversion rather than a case of larceny by bailee, consented to a new trial being granted. Such an order was then made. The defendants thereupon petitioned the court to discharge them on the ground that there was a verdict of not guilty as to fraudulent conversion, that, having been acquitted, they could not again be put in jeopardy on this charge, and that the evidence was not sufficient to sustain a verdict upon both counts. The court construed the Act of May 18, 1917, P. L. 241, as not covering the case, and thereupon sustained the motion to discharge the defendants: 35 Dauph. 73. A petition was presented for a reargument within the term and, upon reargument, the court revoked the order discharging the defendants, overruled the motion therefor, and granted a new trial on the charge of fraudulent conversion: 36 Dauph. 215. A new trial was held September 22, 1932. The present motion is for another new trial and contains reasons for arrest of judgment.

This case might be said to have dragged too long, but the court has purposely

delayed the consideration of the last motion in the hope that the case might be settled, as it ought to be. For, whatever may be said as to the legal questions involved, the fact remains that the defendants got the car and money of the prosecutor and kept them without making a very serious effort to satisfy him, when they were in position so to do and before bankruptcy overtook them.

In view of the earnestness and industry of counsel for the defendants, we have carefully reëxamined the whole case and are still satisfied, as we were when we allowed the second trial, that we were wrong in concluding, on the first trial, that the charge of fraudulent conversion was not sufficiently made out to submit the case to the jury. When Hartzell surrendered his car, the defendants gave him what was called a "new car order blank" which treated the transfer and delivery of the car back to the defendants as representing cash and contained the following entries: "Less cash payment in full, $1,255", and "total credit, $1,255"; "Balance due 00.00". The defendants thereby admitted that they had in their possession $1,255 in cash or its equivalent, paid by Hartzell to them for a new car. In the first trial, that phase of the case was overlooked by both counsel and the court. In our opinion granting the new trial: 36 Dauph. 215; we have discussed this matter fully, and we reaffirm the conclusion to which we came at that time that the evidence in this case, in the light of the authorities there cited: Commonwealth v. Vis, 81 Pa. Superior Ct. 384; Commonwealth v. Ryder, 80 Pa. Superior Ct. 452; Commonwealth v. Gilliam, 82 Pa. Superior Ct. 75; Commonwealth v. MacDonald, 74 Pa. Superior Ct. 357; is sufficient to sustain a conviction of fraudulent conversion under the Act of May 18, 1917, P. L. 241.

The present motion for a new trial is based upon two reasons: (1) That the "court erred in overruling the plea of autrefois acquit and former jeopardy"; and (2) that "the court erred in overruling the defendants' motion for binding instructions for acquittal".

The pleas of "former acquittal" and "former jeopardy" are two distinct and separate pleas. In disposing of the plea of former jeopardy, we heretofore said, upon the authority of McCreary et al. v. Commonwealth, 29 Pa. 323, decided in 1857, and other cases cited in our opinion, that that plea applied to capital cases only. Counsel for the defendants, in referring to our conclusion in this respect, somewhat shocked us by saying: "This attitude is archaic and covered with a miasma of stagnant thought". We were concerned that our mental processes were regarded as so old-fashioned as to be "stagnant". But then we were subsequently comforted when we discovered that the Supreme Court is still in the same state of alleged stagnation. If the counsel who prepared this brief, instead of resting for recuperation after the travail which gave birth to this literary gem, had been stirring instead of stagnant, he might have discovered that not only had Judge Gordon, of the Quarter Sessions of Philadelphia, in a very able and extensive opinion, come to the same conclusion: Commonwealth v. Commander et al., 10 D. & C. 275 (1928) ; but the Supreme Court also, in an extensive opinion in Commonwealth v. Simpson, 310 Pa. 380, decided February 1, 1933, has concluded that the plea of double jeopardy is not even available in a charge for murder where the Commonwealth waives every right to press for murder of the first degree and where therefore life is not involved. While three judges of the court dissented from this conclusion, they did not dissent from the proposition that double jeopardy in Pennsylvania is available only where the charge involves a capital crime. The Superior Court also, in Commonwealth v. Beiderman, 109 Pa. Superior Ct. 70, decided April 25, 1933, announced the same rule. Counsel, with somewhat a waste of energy, since the law is settled in Pennsylvania, has reviewed a number of authorities from other States, in which the

plea of double jeopardy is available generally in all classes of criminal cases. But these cases, like the cases in the Supreme Court of the United States upon this subject, are not binding upon the Pennsylvania courts. For, as Judge Schaffer said, in Commonwealth v. Simpson, supra, page 388, with reference to Ex parte Lange, 18 Wall. 163: "This ruling is not binding upon us, because the provision in the United States Constitution is a limitation upon the powers of the federal government and is not a limitation upon the states". So, notwithstanding the archaic and miasmatic condition to which counsel for the defendant has relegated us, we must still adhere to our previous opinion.

This brings us to the only real question in this case—whether or not there was a former acquittal upon the charge of fraudulent conversion. We recognize this as a real question. The great weight of authority demonstrates that where a case has been submitted to the jury and there is a finding on one count it is equivalent to an acquittal on all others considered by the jury, though not mentioned in the verdict, and may be pleaded as a prior acquittal on those counts as to which the verdict is silent: 16 C. J. 260, sec. 434, and notes; Girts v. Commonwealth, 22 Pa. 351; Commonwealth v. Curry, 285 Pa. 289; Commonwealth v. Mc. Evans, 92 Pa. Superior Ct. 124, 128; Commonwealth v. Sobel, 94 Pa. Superior Ct. 525; Commonwealth v. Rosser et al., 102 Pa. Superior Ct. 78, 87.

However, in reviewing these cases and others, we find that the plea of former acquittal is available where the charge was submitted to and passed upon by the jury, even though the verdict is silent as to the particular charge. We may say in passing that some courts have treated the pleas of former acquittal and former jeopardy as the same plea: Commonwealth v. Epstein, 83 Pa. Superior Ct. 75. In Commonwealth v. Beiderman, 109 Pa. Superior Ct. 70, 72, referring to Commonwealth v. Friedman et al., 94 Pa. Superior Ct. 491, 495, the court held: " 'A plea of "former acquittal" presupposes a verdict. . . .' ". If there was no verdict embracing this charge rendered by the jury at the first trial, a plea of former acquittal cannot be sustained.

The question confronting us is whether the jury understood and actually passed upon the charge of fraudulent conversion, considering the way in which the trial judge submitted the case to the jury on the first trial. There seems to be no Pennsylvania case which, on its facts, is in point.

In Lee v. The State, 90 Texas Cr. App. 458, 235 S. W. 1093, the indictment charged in two counts unlawful sale and unlawful possession of intoxicating liquor. The court limited the jury's consideration to the count for possession. The defendant was convicted, and it was held that that was tantamount to an acquittal of the offense of unlawful selling.

In The State of Missouri v. Maurer, 96 Mo. App. 347, 70 S. W. 264, the information contained several counts charging selling of liquor. Some of them were abandoned at the trial, and it was held that a failure of the jury to find on such counts did not prejudice the defendant and was an acquittal thereon.

In Castner et al. v. The People, 67 Colo. 327, 184 Pac. 387, it is held: "When the court directs a verdict of not guilty as to one count, such direction is equal to acquittal, and will support a plea of former jeopardy."

In State v. Thompson, 95 N. C. 596, it is held:

"If upon the trial of an indictment, containing several counts, the jury is directed to confine its investigation to one count only, a general verdict of guilty will be construed as an acquittal on all the counts withdrawn from the consideration of the jury."

These four cases are the only ones which we have found which seem directly to support the contention of the defendants in this case. The first two cases are very inadequately reported. In the Castner case, the judge specifically directed

the jury to find a verdict of not guilty on the third and fourth counts, thereby submitting the matter to them. The Thompson case seems, however, directly in point in the defendants' favor. In all the other cases which the industry of counsel for the defendants has submitted to us, the question was either actually passed upon by the jury, or the plea of double jeopardy was involved, and we will not take the time specifically to review all of those cases. If the plea of double jeopardy were available in a case like this, it would have to be sustained, because the defendants were in jeopardy on this charge. They were subjected to a trial before a court having jurisdiction competent to try them, and the jury was properly selected and sworn on the indictment, which was sufficient to support any judgment that might have been rendered: 1 Wharton, Criminal Law (12th ed.) 548, sec. 395; but the plea of double jeopardy is not available to them. Their only available plea is former acquittal, and it must appear, in order for that plea to avail, that the jury considered the charge. We think it is time to get away from the technical rules based upon the tender solicitude which the common law had for criminals. No man ought to be subjected to more than one proper trial for the same offense. But if there has not been a proper trial, due to the exigencies of the case or even to the mistake of the trial judge, the interest of justice in these days requires that a new trial should be had.

The record in this case shows that there was a motion at the close of the Commonwealth's case for binding instructions, which the court refused to grant. At the conclusion of the trial, the defendants again renewed their motion and the court said: "We will not submit to the jury the question of fraudulent conversion, but we will submit to the jury the question of larceny by bailee as to both defendants." In the midst of the charge the court said: "Under the law, we have to instruct you that no offense has been made out on the first count of this indictment", and at the end counsel said: "If the court please, as I understand then, the jury is directed to return a verdict of not guilty upon fraudulent conversion, and the second count of larceny by bailee is submitted to them for consideration". The court replied: "I think I made that clear". What instruction would this carry to the ordinary jury? The trial judge said that fraudulent conversion would not be submitted to them. He said again that such offense had not been made out, and when counsel said that the second count was to be submitted to them for consideration and asked whether the jury was to return a verdict of not guilty upon fraudulent conversion the court said: "I think I made that clear". The jury evidently did not understand that they were to return a verdict of not guilty because they returned no verdict as to fraudulent conversion. Taking the language as it appears in the record and the fact that the jury returned no verdict, we think that the jury understood that it was not to pass upon the charge of fraudulent conversion. That being the conclusion, it follows that the jury has not considered this charge and therefore the plea of autrefois acquit was not available against the second trial. There was abundant evidence to convict.

For these reasons the motion for a new trial which, as to the plea of autrefois acquit, is in effect a motion in arrest of judgment, must be overruled.

Now, September 25, 1933, the motion for a new trial is overruled and the district attorney is directed to move for judgment on the verdict.

From Homer L. Kreider, Harrisburg, Penna.